Soledad Cristina VELARDE, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 96–71002.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1998.

Decided April 10, 1998.

Soledad Cristina Velarde, pro per, La Mirada, CA.

Michele Y.F. Sarko, Office of Immigration Litigation, Civil Division, Depart. of Justice, Washington, DC, for respondent.

Before: FLETCHER, MAGILL,* and THOMAS G. NELSON, Circuit Judges.

## OPINION

FLETCHER, Circuit Judge:

Soledad Cristina Velarde, a native and citizen of Peru, appeals the BIA's summary denial of her application for asylum or withholding of deportation. Velarde was a bodyguard for the daughters of then-President of Peru, Alan Garcia, before she fled to the United States following numerous death threats, receipt of a package bomb and an abduction attempt by members of the terror-

ist guerilla group Sendero Luminoso. Velarde claims that if she is returned to Peru, she will continue to be persecuted by Sendero on account of her political opinions. We hold that the BIA abused its discretion in denying relief to Velarde and remand.

## I.

Velarde, a 36 year old native and citizen of Peru, was ordered on March 21, 1995, to show cause why she should not be deported for entering the United States without inspection on or about December 1, 1991. In the hearing before the Immigration Judge (IJ) on October 16, 1995, Velarde conceded deportability, but applied for relief from deportation on the basis of fear of persecution for her political opinion if she returns. Velarde testified that she fears persecution if returned to Peru because her life was threatened by the Peruvian terrorist group Sendero Luminoso ("Shining Path").

Velarde worked as a security guard for the daughters of then-President of Peru, Alan Garcia, from 1986 to 1988. Her duties included escorting the girls to the presidential palace after school, to parties and to other public functions. Prior to 1986, Velarde worked for the Intelligence Service of the National Police Force. From 1988 to 1990, she worked as a police officer in Lima. Thereafter, she worked at the high school for children of police officers until she fled the country in late November 1991.

Velarde testified that she received threatening phone calls at the high school between May and October 1991, during which the anonymous callers told her that Sendero Luminoso was watching her and would get her because of her work in gathering intelligence for the government. The callers identified themselves only with the salutation "long live Comrade Gonzalo," the leader of Sendero Luminoso. In June 1991, the commander of the intelligence police advised Velarde to move out of her parents' home where she had been living because every officer that had taken part in the security of President Garcia's daughters had been receiving similar

---

* Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

threats. She then moved in with her aunt, but continued to receive threatening phone calls. Later that month, two other members of the security detail for the ex-President's daughters were killed, apparently by Sendero Luminoso.

On November 15, 1991, Velarde received a package at the high school addressed to her but without a return address. Her suspicions aroused, Velarde called the police who evacuated her office and discovered that the package contained explosives. No one was injured, but a symbol of a sickle and hammer inside the package indicated that it was from Sendero Luminoso. After making a report, the police commander advised Velarde to be careful in her movements.

That same day, while on her way home, three people parked in a truck near Velarde's residence leapt out at her and tried to force her into the truck. A woman grabbed Velarde's face and two others tried to knock her off balance. Shots were fired and Velarde dropped to the ground, trying to take cover in the bushes near the house. One of the would-be abductors was killed by police or security personnel in the area, and the two others ran away. One of those two was injured and subsequently arrested. He admitted to belonging to Sendero Luminoso. Velarde was subsequently advised and assisted by security personnel to leave the country.

Velarde testified before the IJ that she fears for her life if returned to Peru. She explained that her family has received approximately 20 threats from Sendero Lumi-

noso since she left Peru, the most recent one 15 days prior to her hearing before the IJ. These threats have taken the form of anonymous letters with blood and symbols of Sendero Luminoso on them. Velarde further testified that she cannot relocate internally in Peru because Sendero Luminoso operates in the entire country. The INS did not offer any evidence before the IJ, apart from its cross examination of Velarde. Nor did the Department of State offer any advisory opinion regarding country conditions in Peru.

In his oral decision of October 16, 1995, the IJ specifically found Velarde to be a credible witness. The IJ also explained that Velarde's lack of documentary evidence supporting her claim was not "fatal."[1] Nevertheless, the IJ ruled, at least in part because of her lack of documentary evidence, that Velarde had not met her burden of proof to warrant asylum.

Characterizing Velarde's claim as fear of persecution on the basis of her membership in a "social group of . . . ex-policemen," the IJ seemed to conclude that no one in Velarde's position could reasonably fear persecution.[2] The IJ also ruled that "the package bomb, telephone calls and the attempted kidnapping [were not] so extreme as to warrant" asylum or withholding of deportation. As a result, the IJ declared that he had "no other alternative" but to deny Velarde's applications for asylum and withholding of deportation. The IJ did grant voluntary departure.

Velarde appealed the IJ's decision to the BIA. In its September 30, 1996, decision affirming the order of deportation,[3] the BIA

---

1. While not acknowledged by the IJ in his oral decision, Velarde did proffer photographic evidence supporting her claims to have worked at the school.

2. The IJ's exact finding is far from lucid, apparently the result of a word processing error in which two different sentences were spliced together. It reads in full: "In any event, the Court does not find that anyone in respondent's position today, nearly seven years after the respondent had worked as a security guard for these minors, and four years after respondent departed Peru, the Court finds that no one would be interested in the respondent for her activities as a security guard from 1986 to 1988."

3. The date of the BIA's decision provides the basis for determining the applicability of the Illegal Immigration Reform and Immigrant Respon-

sibility Act of 1996 (IIRIRA) to the jurisdiction of this court pursuant to 8 U.S.C. § 1105a(a) to review a final order of deportation. The IIRIRA, enacted September 30, 1996, repealed § 1105a for all final orders of deportation and provided transitional rules governing judicial review. However, pursuant to the IIRIRA's amended effective date, neither the repeal nor the transitional rules apply to this case. See IIRIRA, Pub.L. No. 104–208, §§ 306, 309, 110 Stat. 3009, 3009–607 to 3009–612, 3009–625 to 3009–627 (Sept. 30, 1996), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3657 (repeal takes effect 180 days after enactment, transitional rules apply where final order of deportation entered more than 30 days after enactment).

noted that the IJ "specifically found her to be a credible witness," and that such a finding was "entitled to great weight." However, the BIA also affirmed the IJ's conclusion that Velarde's claims had not been "corroborated." Then, citing *Matter of Fuentes*, 19 I. & N. Dec. 658, 1988 WL 235456 (BIA 1988), the BIA in a single sentence denied relief, stating "[w]e find that even if her claims had been corroborated, which they were not, the respondent has not established that the threatened harm directed at her was on account of her political opinion or imputed political opinion."

■■■ We will uphold the BIA's denial of asylum if it is supported by reasonable, substantial and probative evidence in the record. *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). Similarly, the BIA's decision whether to withhold deportation is reviewed for substantial evidence. *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1255 (9th Cir.1992). Review is limited to the administrative record. *Aruta v. INS*, 80 F.3d 1389, 1393 (9th Cir.1996). However, we will consider the record as a whole, including evidence which contradicts the BIA's findings. *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir.1987). "[W]here the IJ expressly finds certain testimony to be credible, and where the BIA makes no contrary finding, we 'accept as indisputed' the testimony given at the hearing before the IJ." *Singh v. INS*, 94 F.3d 1353, 1356 (9th Cir.1996) (quoting *Singh v. Ilchert*, 63 F.3d 1501, 1506 (9th Cir.1995)). We review de novo the BIA's determinations of purely legal questions regarding the requirements of the Immigration and Nationality Act. *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir.1996) (en banc).

## II.

Velarde applied for both withholding of deportation and asylum. The Attorney General must withhold deportation if an alien's "life or freedom would be threatened in such country on account of race, religion, national-ity, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h).

■■■ To obtain withholding of deportation, the applicant must demonstrate a "clear probability of persecution" by the government or a group that the government cannot or will not control. *Mendoza Perez v. INS*, 902 F.2d 760, 761 (9th Cir.1990). The standard for determining a "clear probability" sufficient to warrant withholding of deportation is that the persecution is "more likely than not" to occur. *Gomez–Saballos v. INS*, 79 F.3d 912, 914 (9th Cir.1996). We will not reverse the BIA's decision not to withhold deportation "unless a reasonable factfinder would be compelled to find the petitioner eligible for the relief sought." *Id.*

■■■ The Attorney General may also in her discretion grant asylum to an alien present in the United States who is a "refugee." 8 U.S.C. § 1158(b). A "refugee" is an alien who is unable or unwilling to return to his or her country of origin "because of persecution or well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Either past persecution or a well-founded fear of future persecution provides eligibility for a discretionary grant of asylum.[4]

■■■ Establishing the well-founded fear of persecution sufficient to qualify for asylum requires a "subjectively genuine" and "objectively reasonable" fear of persecution. *Arriaga–Barrientos v. INS*, 937 F.2d 411, 413 (9th Cir.1991). The Supreme Court, in the seminal case *INS v. Cardoza–Fonseca*, 480 U.S. 421, 431, 107 S.Ct. 1207, 1212–13, 94 L.Ed.2d 434 (1987), clarified that this standard is less stringent than the standard for withholding of deportation.

■■■ "The subjective component requires that the applicant have a genuine concern that he will be persecuted," *Aguilera–Cota v. INS*, 914 F.2d 1375, 1378 (9th Cir.

4. An alien who establishes past persecution is presumed to have a well-founded fear of persecution. 8 C.F.R. 208.13(b)(1)(i). To rebut this presumption, the INS bears the burden of showing by a preponderance of the evidence that "since the time the persecution occurred condi-tions in the applicant's country of nationality ... have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted were he to return." *Id.; see also Singh v. INS*, 94 F.3d 1353, 1361 (9th Cir.1996).

1990), and may be satisfied by the applicant's testimony that she genuinely fears persecution. *Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir.1993). The objective component requires that the alien establish a reasonable fear of persecution by credible, direct and specific evidence. *Lopez–Galarza v. INS*, 99 F.3d 954, 958–59 (9th Cir.1996). An alien is not, however, required to present proof that persecution is more likely than not. *Cardoza–Fonseca*, 480 U.S. at 431, 107 S.Ct. at 1213 ("One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place."). In fact, we recently clarified that a "one in ten chance" is sufficient. *Montecino v. INS*, 915 F.2d 518, 520 (9th Cir.1990).

■■■■ Once eligibility for asylum is established, it is within the BIA's discretion to grant asylum. *Lopez–Galarza*, 99 F.3d at 960. We review the BIA's discretionary denial of asylum for an abuse of discretion; the BIA abuses its discretion if the decision is "arbitrary, irrational, or contrary to law." *Id.*

■■■■ Failure by the BIA "to support its conclusions [denying relief] with a reasoned explanation based upon legitimate concerns" also constitutes an abuse of discretion. *Vargas v. INS*, 831 F.2d 906, 908 (9th Cir. 1987). As we have repeatedly explained,

> [W]hen allegations are specific and supported by evidentiary material, and the Board denies eligibility for relief, it must give reasons for its decisions showing that it has properly considered the circumstances. To affirm on the theory that the Board necessarily considered whatever the petitioner asserted would free the Board of the obligation to articulate a reasoned basis for its decisions, eliminating any guaranty of rationality and foreclosing meaningful review for abuse of discretion.

*Santana-Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981) (citations omitted); *ac-*

*cord Tukhowinich v. INS*, 64 F.3d 460, 463 (9th Cir.1995).

■■■■ In the instant case, following a brief recitation of the facts, a statement about the great weight owed to the IJ's finding of Velarde's credibility, and boilerplate language regarding the requirements of the statute, the BIA dismissed Velarde's claim in a single sentence asserting the conclusion that Velarde had not established that the threatened harm against her was on account of her political opinion or imputed political opinion. The only clue given by the BIA regarding its reasons for finding that Velarde had not met her burden is its citation to *Matter of Fuentes*, 19 I. & N. Dec. 658, 1988 WL 235456 (BIA 1988). As shown by the parenthetical used by the BIA to describe that case, the BIA cited *Fuentes* for the proposition that "dangers which arise from the nature of employment as a policeman in an area of domestic unrest (*e.g.*, attacks because they are viewed as extensions of a government's military forces) do not support a claim of a well-founded fear of persecution."

The BIA's explanation for its denial of Velarde's application does not meet the minimum standards for articulating reasons for denying relief from deportation. From the start, it is unclear to what extent the BIA adopted the findings and conclusions of the IJ in denying relief. Unlike the IJ, who considered Velarde's claim of persecution to be based on membership in a social group, the BIA seems to characterize her claim as persecution on account of her political opinion. It is also unclear to what extent the BIA, like the IJ, discounted the weight of Velarde's uncontroverted testimony (despite finding her credible) due to a lack of "corroboration."[5] Ultimately, the BIA simply fails to state why it finds that Velarde did not meet her burden, apart from the single case citation to *Matter of Fuentes*.

---

**5.** We have repeatedly emphasized that no such corroboration is required. *See, e.g., Aguilera–Cota v. INS*, 914 F.2d 1375, 1380 (9th Cir.1990) ("We have previously tried to make it clear that asylum applicants are not required to produce documentary evidence of events such as those involved here."); *accord Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir.1984) ("Au-

thentic refugees are rarely able to offer direct corroboration of specific threats.... Persecutors are hardly likely to provide their victims with affidavits attesting to their acts of persecution."); *McMullen v. INS*, 658 F.2d 1312, 1319 (9th Cir.1981) ("[I]t is difficult to imagine what other forms of testimony the petitioner could present other than his own statement.").

Although in some circumstances citation to a single precedent may constitute a sufficient articulation of the reasons for denying relief, the one case cited by the BIA in the instant case does not adequately address the claims raised by Velarde. In *Fuentes,* the BIA held that an otherwise deportable alien cannot use "dangers faced by policemen as a result of that status alone" to establish a well-founded fear of future persecution based on past persecution. 19 I. & N. Dec. 658, 660 (BIA 1988). However, the BIA in *Fuentes* did not foreclose the possibility of an ex-police officer ever establishing a well-founded fear of future persecution. On the contrary, the BIA expressly stated in *Fuentes* that "status as a former member of the national police ... is in fact an immutable characteristic. It is possible that mistreatment occurring because of such a status in appropriate circumstances could be found to be persecution on account of political opinion or membership in a social group." *Id.* at 662. Moreover, the ex-police officer in *Fuentes* did not have the same type of high-profile, politically-charged duties as Velarde did as bodyguard to the President's daughters. Finally, *Fuentes* does not even address the issue of imputed political opinion. We hold that the BIA abused its discretion by failing to articulate its reasons for denying relief from deportation.

We further note with concern the suggestion by the BIA that *Fuentes* precludes former police officers and soldiers from establishing claims of persecution or fear of persecution. Numerous decisions by this court demonstrate that former police officers and soldiers may establish such claims. For example, in *Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1280 (9th Cir.1984), we reversed a decision of the BIA denying relief from deportation to a former soldier and member of the "Escolta Militia," a voluntary civilian police squad that guards against guerrilla infiltration for the government in El Salvador. Thinking that Bolanos–Hernandez would be useful to them due to his membership in those groups, the guerrillas threatened to kill him if he did not join them or, alternatively leave the country. *Id.*

In a similar case, *Montecino v. INS,* we reversed the BIA's decision denying relief from deportation to a former soldier in the El Salvadoran army, explaining that

In a civil war persons engaged in military service will be shot at by the other side. But when a person has abandoned military service and is resuming life as a civilian, it is not civil war to kill him. It is an act of barbarism, of terrorism, of persecution. It is the persecution of a member of a distinct group-ex-soldiers-who became the object of harm because their persecutors identify them politically with the government they served.

\*   \*   \*   \*   \*   \*

[F]ear of reprisal from guerrillas on the part of an ex-soldier is a type of political persecution and that if such a soldier, on the basis of objective circumstances personally known to him, believes that he has at least a one in ten chance of being killed by the guerrillas, he meets the statutory test of eligibility [for asylum].

915 F.2d 518, 520 (9th Cir.1990).

We likewise reversed the BIA's denial of relief from deportation to a former El Salvadoran soldier in *Artiga Turcios v. INS,* concluding that "[b]ecause of Artiga's former affiliation with the Salvadoran Army, his specialized combat training, and his participation in the battles with the guerrillas, the guerrillas are likely to consider him a political opponent." 829 F.2d 720, 723 (9th Cir.1987); *see also Martinez–Sanchez v. INS,* 794 F.2d 1396, 1397 (9th Cir.1986) (reversing BIA's denial of relief from deportation to former member of El Salvadoran paramilitary group); *cf. Chanco v. INS,* 82 F.3d 298, 303 (9th Cir.1996) ("Chanco is correct that reprisals against former military officers can provide a basis for granting asylum.").

In the instant case, Velarde has credibly testified that she received numerous life-threatening phone calls from Sendero Luminoso guerrillas on account of her intelligence gathering for the government, that the commander of the intelligence police subsequently advised her to move out of her parent's home but that after she moved in with her aunt the calls continued, that two other members of the security detail for the ex-President's daughters were killed by Sendero near

this time, that she received a package bomb with a symbol indicating that it was from Sendero, that three people tried to abduct her and that one would-be abductor who survived confessed that he was with Sendero, and that she was subsequently advised by security personnel to leave the country and helped by them to do so.

Sendero Luminoso clearly knows who Velarde is and has shown an ongoing and deadly interest in her, her family, and other people involved in Presidential security. Velarde testified that she still fears for her life if returned to Peru because her family has received approximately 20 threats from Sendero Luminoso since she left Peru, the most recent one only 15 days prior to her hearing before the IJ. Velarde further testified that she cannot relocate internally in Peru because Sendero Luminoso operates throughout the country. This claim is supported by the fact that the Peruvian government advised her to flee the country and assisted her in doing so. The Peruvian government's actions clearly suggest its belief that, due to the powerful reach of Sendero,[6] it could not protect Velarde if she stayed in the country. The INS offered no evidence to controvert any of Velarde's claims.

Here, unlike *Fuentes*, "the facts surrounding the possible danger faced by the respondent ... and, more specifically, the reasons for that danger" have been "clearly developed." 19 I. & N. Dec. at 662. In addition, unlike *Fuentes*, Velarde has testified to specific "instances of individuals endangered for having been in the [Presidential security] service." *Id.* Thus, under the terms outlined by the BIA in *Fuentes*, it appears that Velarde should at least be eligible for asylum if not deserving of withholding of deportation.

Moreover, Velarde's position as one of the bodyguards of the President's daughters had a much higher political profile than that of Fuentes, who was a member of the national police and a guard at the U.S. Embassy. This court recognized the potential impact of such a "politically-charged" position, for example, when it reversed the BIA's denial of relief from deportation to a former prison

director. *See Gomez–Saballos v. INS*, 79 F.3d 912, 917 (9th Cir.1996) ("The death threats to him by those imprisoned cannot be separated from his political position and the obvious perception that ... he adhered to political beliefs in opposition to their own.").

■ Finally, the BIA's citation to *Fuentes* does not address persecution based on "imputed," rather than actual, political opinion. As this court recently confirmed in *Sangha v. INS*, an applicant for relief from deportation can establish persecution on the basis of a political opinion by showing that her persecutors imputed a political opinion to her. 103 F.3d 1482, 1489 (9th Cir.1997) (finding persecution based on imputed political opinion "in several different contexts"); *accord Canas–Segovia v. INS*, 970 F.2d 599, 601–02 (9th Cir.1992) (citing *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), to reaffirm that persecution for imputed political opinion is a valid basis for relief from deportation). Here, based on Velarde's position as a former intelligence officer and bodyguard to the President's daughters, "the guerrillas are likely to consider [her] a political opponent." *Artiga Turcios*, 829 F.2d at 723.

Thus, despite the suggestion of the BIA that *Fuentes* is dispositive of this case, Velarde's strong claim of probability of persecution if returned is not in any way hampered by her status as a former bodyguard of the Presidential family. On the contrary, under the terms of *Fuentes* and precedents in this circuit, the nature of Velarde's former employment seems to provide further support for her claim.

### III.

The IJ explicitly found Velarde to be credible and the government failed to produce any evidence against her. As a result, all facts testified to by Velarde must be taken as true. Velarde claims that the package bomb sent to her and the subsequent abduction attempt constituted past persecution on account of her social group or imputed political opinion

---

**6.** We recently recognized the extensive and ongoing impact of Sendero Luminoso in Peru. *See Gonzales–Neyra v. INS*, 122 F.3d 1293, 1295 (9th Cir.1997) (directing the BIA to grant withholding of deportation due to clear probability of persecution from the "continued Shining Path insurrection").

as a former bodyguard to the Presidential family sufficient to raise a presumption of a well founded fear of future persecution. Moreover, Velarde argues that the killings of other bodyguards, as well as the ongoing threats to herself and her family, demonstrate a clear probability of persecution by Sendero Luminoso if she were returned to Peru. We agree.

The BIA's citation to *Matter of Fuentes,* 19 I. & N. Dec. 658, 1988 WL 235456 (BIA 1988), was inadequate justification for denying Velarde relief from deportation. Under the terms of *Fuentes* itself, Velarde's status "is in fact an immutable characteristic" which can provide the basis for finding "persecution on account of political opinion or membership in a social group." *Id.* at 662. Moreover, Velarde's high-profile, politically-charged duties as bodyguard to the President's daughters makes her much more of a target than the policeman in *Fuentes.*

Velarde's claim of likely persecution by Sendero Luminoso on account of her imputed political opinion as a former security guard for the Presidential family is no less compelling than other successful claims brought by former police and army officials, *see Artiga Turcios,* 829 F.2d at 724 (directing the BIA to grant withholding of deportation to former soldier based on clear probability of persecution on account of imputed political opinion by guerrillas in El Salvador); *Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1287–88 (9th Cir.1984) (same), and by other former holders of "politically-charged" positions, *see Gomez–Saballos v. INS,* 79 F.3d 912, 918 (9th Cir.1996) (directing the BIA to grant withholding of deportation to former prison director based on clear probability of persecution on account of imputed political opinion by guerrillas in Nicaragua). Accordingly, we conclude that the BIA's decision not to withhold deportation lacks the support of substantial evidence.

Petition for review GRANTED. REMANDED for proceedings not inconsistent with this opinion.