Juan **VELASQUEZ–VELASQUEZ**,
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 01–3474.

United States Court of Appeals,
Sixth Circuit.

Dec. 20, 2002.

**360**

Before GUY and BOGGS, Circuit Judges; and EDMUNDS, District Judge.*

PER CURIAM.

Petitioner, Juan Velasquez–Velasquez, a native and citizen of Guatemala, appeals from the final order of the Board of Immigration Appeals (BIA) affirming the im-

migration judge's denial of Velasquez's application for asylum and withholding of deportation. The BIA also found Velasquez had failed to make a *prima facie* case of eligibility for relief under the Convention Against Torture (Convention).[1] Petitioner argues that the decision denying him asylum and withholding of deportation was erroneous and that his removal would violate the Convention. After review of the record and the applicable law, we affirm.

I.

Velasquez was charged with entering the United States without inspection in violation of § 241(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1251(a)(1)(B). Conceding that he entered the country illegally, Velasquez petitioned for asylum and withholding of deportation. At the hearing held on June 20, 1996, the INS submitted the State Department's 1996 "Profile of Asylum Claims and Country Conditions" for Guatemala. In addition to his own testimony, Velasquez offered testimony from Anthony Vento, director of a nonprofit, interfaith group called the Interreligious Task Force on Central America.

Velasquez testified that he was born December 10, 1974, in Exchimal, Huehuetenango, in Guatemala, and lived there with his parents until he enlisted in the Guatemalan Army on March 1, 1991. He enlisted for a 30–month term, because it was required by law, and stayed on for a few months after that term ended. Velasquez participated in many battles during his

---

* The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted and opened for signature Dec. 10, 1984, G.A. res. 39/46 (annex, 39 U.S. GAOR Supp. (No. 51) at 197), U.N. Dec. A/39/51 (1984) (implemented by § 2242 of Foreign Affairs Reform And Restructuring Act of 1998 (FARRA), Pub.L. No. 105–277, 112 Stat. 2681, 2681–822 (1998)).

service, but was never involved in recruitment or the handling of prisoners. In February 1994, Velasquez, then age 19, returned home to work with his parents. An army commissioner came to the area and told Velasquez that he had to reenlist for six more months. He did and served as a soldier without rank in a battalion assigned to protect Exchimal.

At about 1:00 a.m., on November 17, 1994, Velasquez and 40 other soldiers were attacked by a group of about 60 guerrillas. After a two-hour battle, during which 18 soldiers were killed and a number more wounded, the soldiers surrendered to the guerrillas. Velasquez testified that he and the other soldiers were bound, blindfolded, and forced to walk into the mountains. He heard the guerrillas saying they wanted to take the prisoners "where there were no people." When they stopped to rest, the guerrillas questioned some of the soldiers.

At about 5:00 a.m., Velasquez overheard the guerrillas say they would kill all the prisoners and decided that he would try to escape. Velasquez sensed that they had stopped in a clearing, slipped away from the group, and began to run. Once he was far enough away, he removed the blindfold and untied his hands. Fearing that the guerrillas would kill him in retaliation for having escaped, he kept walking until he reached a populated area. There, a woman gave him a change of clothes and treated the wound on his back. Velasquez walked all day to a town on the border with Mexico, where a "gentleman" gave him a shot for an infection in his wound. The next day, Velasquez crossed unnoticed into Mexico and hitchhiked to the United States.

Velasquez expressed fear that he would be killed by the guerrillas if he were to be deported to Guatemala. He indicated that two friends of his were ambushed and killed by guerrillas after they were released from the Army in 1994. While Velasquez did not witness the killing of his fellow prisoners before he escaped, he believed that the guerrillas intended to kill them all and presumes that the others are dead.

Vento, a master's degree candidate in theology with a focus on Latin American theologies, testified that he visited Guatemala twice (in 1993 and 1994) as part of a human rights delegation and had some knowledge of Guatemalan history and politics. Vento identified the active guerilla groups and their "umbrella" organization, known as "URNG." He also related the most recent statistics attributing only 5% of human rights abuses in Guatemala to the URNG. The rest was attributed to the national police (24%), military commissioners (17%), the Army (17%), and civilian paramilitary groups (15%). Vento also referenced an incident in which members of the Army killed 11 Guatemalan returnees during a celebration of the one-year anniversary of their return.

Vento stated that Velasquez had a reasonable basis for concern that he might be attacked by guerrillas in retaliation for his Army service and for escaping from their custody. He explained that due to strong ethnic identities and family structures, "outsiders" are subject to scrutiny and viewed with suspicion. As a result, Vento believed that the social structure in Guatemala would make it difficult for Velasquez to return undetected by the guerrillas. This opinion, however, was contradicted by the State Department's Profile, which indicated that relocation was an option for those fleeing guerrilla or military harassment. According to the State Department, at the time of the 1996 profile, the guerrilla movement in Guatemala consisted of about 800 to 1,000 combatants and 2,500 to 10,000 supporters, concen-

trated mostly in remote areas with large Indian populations.[2]

Finally, although Velasquez expressed no fear concerning retaliation from the Army, Vento was of the opinion that Velasquez had reason to be fearful because he would be viewed with suspicion by the Army for not returning to service after the battle and having been last seen in the company of the guerrillas. The only statement Velasquez made regarding the military was part of his written statement in support of asylum. There, Velasquez indicated that he would have been discharged from the Army because they would treat him "as a loser who did not have the courage to fight to the death."

On July 19, 1996, the immigration judge rendered his oral decision denying the application for asylum and withholding of deportation, but granting voluntary departure. Velasquez appealed that decision and raised the claim for relief under the Convention Against Torture. The BIA dismissed the appeal for the reason set forth in a written decision issued on April 5, 2001. This timely appeal followed.[3]

## II.

We apply the substantial evidence standard of review to challenges to the factual determinations of the BIA regarding eligibility for asylum and withholding of deportation. *Klawitter v. INS*, 970 F.2d 149, 151–52 (6th Cir.1992). The BIA's determination must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole; and reversed if the evidence not only sup-

ports a contrary conclusion, but compels it. *Id.* at 152.

### A. Standards for Asylum and Withholding of Deportation

The disposition of an application for asylum involves a two-part inquiry: (1) whether the applicant is a "refugee" within the meaning of the Act; and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994) (citing *INS v. Cardozo–Fonseca*, 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). A refugee is defined as a person who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A).

The well-founded fear standard has both an objective and subjective component: "an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic*, 33 F.3d at 620 (citing *Cardozo–Fonseca*, 480 U.S. at 430–31, 107 S.Ct. 1207). An applicant for asylum has a well-founded fear of persecution if he can show that " 'persecution is a reasonable possibility' " should he be returned to his country of origin; he need not show that he will probably be persecuted. *Id.* (citing *Cardoza–Fonseca*, 480 U.S. at 440, 107 S.Ct. 1207). When the persecutor is not the government or government-sponsored, the applicant bears the burden of demonstrating that reloca-

---

**2.** While the Profile recognized that relocation is more difficult for those of Indian ancestry, Velasquez never claimed to be an Indian.

**3.** On June 12, 2001, this court denied petitioner's motion for stay of deportation with-

out prejudice to renewal should he be in a position to demonstrate a likelihood of success on the merits or imminent irreparable harm.

tion within his home country is not reasonable. 8 C.F.R. § 208.13(b)(3)(i).[4]

A more stringent burden applies to claims for withholding of deportation under 8 U.S.C. § 1253(h). To qualify for withholding of deportation, an alien must demonstrate a "clear probability" that he would be subject to persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir.1998).

B. The BIA's Decision

The immigration judge found that Velasquez did not experience past persecution by either the guerrillas or the Guatemalan government on account of one of the enumerated factors since he was wounded and captured in the course of combat with the guerrillas. See *Matter of Fuentes*, 19 I & N Dec. 658 (BIA 1988). With respect to his fear of future persecution, the immigration judge recognized that, under *Fuentes*, one's status as a former member of the military was an "immutable characteristic" such that mistreatment because of that status could constitute persecution on account of political opinion or membership in a particular social group.

While finding Velasquez was credible, the immigration judge concluded that the evidence did not support a finding of a well-founded fear of persecution on account of political opinion or membership in a particular group. The immigration judge explained that:

> While the respondent has submitted documents in support of his application which [c]ite occasion[al] attacks by guerrilla forces against Army bases[,] the majority of these documents detail human rights violations by the military

against [indigenous] peoples. Mr. Vento also pointed to the United Nations Report on Human Rights Abuses [stating that] the guerrillas were the perpetrators in only 5% of the cases. He also admitted that the guerrilla forces do not have a high level of communication network.

Thus the evidence in record simply does not establish that the guerrilla forces have the capability or the inclination to persecute the respondent, that the Guatemalan government or military is either unable or unwilling to control them[,] and that internal relocation is not feasible. Moreover[,] the respondent's remaining relatives in Guatemala do not appear to have been adversely affected.

Finally[,] although the State department does note that desertion is punishable by imprisonment or possibly death[,] this aspect of his claim as it relates to problems that he could encounter on account of his not having returned to his battalion was not sufficiently addressed or developed so as to provide an additional basis for future persecution.

(Footnotes omitted.)

The BIA likewise found that Velasquez had failed to show that any harm he may have experienced, or might fear if returned to Guatemala, was based on one of the statutorily enumerated grounds. Instead, the BIA concluded that Velasquez's experiences were the result of his participation in the military, not on account of political opinion or membership in a particular social group. The BIA specifically found no basis to conclude that his escape was "an expression of anything other than

---

4. An applicant who satisfies his burden of establishing actual past persecution is presumed to have a well-founded fear of persecu-

tion. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir.1998) (citing 8 C.F.R. § 208.13(b)(1)(i)).

his desire to live." As for future persecution, Velasquez failed to establish "facts on which a reasonable person would fear that the danger arises on account of being a[n] army veteran or a former soldier who escaped." Finally, the BIA found the evidence did not establish a *prima facie* case for eligibility for relief under the Convention Against Torture. *See* 8 C.F.R. § 208.16.

## C. *Matter of Fuentes*

Both the immigration judge and the BIA relied on the decision in *Matter of Fuentes,* 19 I & N Dec. 658 (BIA 1988). Velasquez argues that *Fuentes* improperly disqualifies members of the police or military from establishing asylum or withholding on grounds that are not supported by the INA's definition of "refugee." When confronting questions that implicate an agency's construction of the statute it administers, courts must apply *Chevron* deference. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the statute is silent or ambiguous with respect to the specific issue, the court must determine whether the agency's answer is based on a permissible construction of the statute. *Id.* at 843, 104 S.Ct. 2778. *See also INS v. Aguirre–Aguirre,* 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

Although *Fuentes* addressed several issues, Velasquez challenges the portion of that decision that held a police officer or military combatant facing danger in civil unrest as a result of that status alone does not face persecution on account of one of the statutorily enumerated grounds. The BIA explained in part that:

As policemen around the world have found, they are often attacked either because they are (or are viewed as) extensions of the government's military forces or simply because they are highly visible embodiments of the power of the state. In such circumstances, the dangers the police face are no more related to their personal characteristics or political beliefs than are the dangers faced by military combatants. Such dangers are perils arising from the nature of their employment and domestic unrest rather than "on account of" immutable characteristics or beliefs within the scope of sections 101(a)(42)(A) or 243(h) of the Act, 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h) (1982).

*Fuentes,* 19 I & N Dec. at 661. The BIA observed that if a policeman or guerrilla were to be found a victim of persecution based solely on the fact of an attack by one against the other, then the attacker would be a persecutor and "[v]irtually all participants on either side of an armed struggle could be characterized as 'persecutors' and would thereby be ineligible for asylum or withholding of deportation." *Id.* at 662. The BIA rejected such a broad definition of "persecution." With respect to fear of future persecution, however, the BIA held that one's status as a *former* policeman is an immutable characteristic and that mistreatment because of such status could be found to be persecution on account of political opinion or membership in a particular social group. *Id.*

Velasquez asserts that *Fuentes* is inconsistent with the INA because the definition of "refugee" contains no exception for members or former members of the armed services. As is apparent from the above discussion, the *Fuentes* decision does not disqualify members of the armed services from seeking asylum or withholding of deportation. *See Velarde v. INS,* 140 F.3d 1305, 1311 (9th Cir.1998) (*Fuentes* does not flatly preclude police officers and soldiers from establishing claims of persecution or fear of persecution). The BIA's interpretation of the term "refugee" defines cer-

tain dangers that cannot be found to be "on account of" one of the statutorily enumerated grounds. Velasquez has not shown this interpretation is based on an impermissible construction of the statute.

### D. Persecution or Fear of Persecution

■ Clarifying that he does not claim persecution based on the wound he received in battle, Velasquez relies instead on the statements he overheard indicating the guerrillas' intention to kill him along with the other captured prisoners, which he argues was persecution on account of his political opinion, as expressed through his military service. There was no evidence in the record that Velasquez expressed opposition to the guerrillas, or took action that might be interpreted as opposition, apart from his doing his job as a soldier and resisting the guerrillas' attack. When the claim of persecution is based solely on the applicant's status as a current member of the military, the persecution is not on account of one of the statutorily enumerated grounds. *See Cruz–Navarro v. INS*, 232 F.3d 1024, 1029 (9th Cir.2000) (applying *Fuentes* ); *Chanco v. INS*, 82 F.3d 298, 302 (9th Cir.1996) (same). Substantial evidence supports the BIA's decision on this issue. Consequently, no presumption of future persecution arises.

Velasquez claims a well-founded fear of future persecution if he is forced to return to Guatemala "on account of" (1) an imputed political opinion expressed by his escape, and (2) because of his status as a former soldier. He testified to an objective fear that the guerrillas would kill him if he returned, but that fear must also be reasonable. When an asylum applicant fears persecution because of a past association, he "bear[s] the burden of establishing facts on which a reasonable person would fear that the danger arises on ac-

count of his race, religion, nationality, membership in a particular social group, or political opinion." *Fuentes*, 19 I & N Dec. at 662.

Velasquez characterizes his escape as a "separate non-violent act of political defiance" from which the guerrillas could have believed he opposed them politically. Velasquez relies on *Turcios v. INS*, 821 F.2d 1396, 1401 (9th Cir.1987), which held that persecution for overt manifestation of political opinion is persecution on account of political opinion. In that case, however, police in El Salvador kidnaped, arrested, and tortured Turcios because they believed he was involved with guerrilla politics. The manifestation of his political opinion was being seen discussing the government's intervention in university affairs with a "leftist professor" and participating in public demonstrations. Here, the BIA found there was no basis to conclude that Velasquez's escape was an expression of anything other than a desire to live. We find that substantial evidence in the record more than adequately supports this determination.

To establish well-founded fear of persecution because he is a veteran of the military, Velasquez must establish facts on which a reasonable person would fear that danger arises on account of political opinion or status as a former member of the military. Although Vento expressed the opinion that his fear was reasonable, there was also evidence that only 5% of human rights abuses were attributable to the guerrillas.

Velasquez relies on the fact that two friends of his were ambushed by guerrillas after they were released from the Army in 1994. Velasquez claims that the guerrillas may believe he opposes them politically because of his status as a veteran, relying heavily on the decisions in *Velarde v. INS*, 140 F.3d 1305 (9th Cir.1998),

and *Sotelo–Aquije v. Slattery,* 17 F.3d 33 (2d Cir.1994). In both of those cases, however, the evidence demonstrated that the individuals fled Peru because they were repeatedly and directly threatened on account of their opposition or perceived opposition to the Shining Path guerrillas.

In contrast, the evidence in this case would not compel a factfinder to conclude either that Velasquez would be targeted by the guerrillas or that the guerrillas would impute political opposition to him because of his status as a veteran. Nor is there evidence to support the assertion that the guerrillas might target him as a potential witness to the detention of the other soldiers whom he presumes were killed. Further, despite Vento's opinion that Velasquez could not return to Guatemala undetected by the guerrillas, the State Department's report indicated that people fleeing guerrilla or military harassment in areas of conflict, including Huehuetenango, generally are able to find peaceful residence elsewhere in the country. The profile indicated that internal relocation may be more difficult for Indians, but Velasquez has not claimed to be Indian.

The denial of asylum and withholding of deportation on the grounds of persecution or fear of persecution by the guerrillas was supported by substantial evidence.[5]

## E.  Convention Against Torture

■ Judicial review of Convention claims is available only when they are heard as part of the review of a final order of removal pursuant to 8 U.S.C. § 1252. *See Ali v. Reno,* 237 F.3d 591, 596 (6th Cir.2001) (citing § 2242(d) of FARRA and 8 C.F.R. § 208.18(e)). The applicant for withholding of removal under the Convention bears the burden to establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture" is defined as

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, *when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.*

8 C.F.R. § 208.18(a)(1) (emphasis added). Thus, the Convention offers no protection to Velasquez for his fear that the rebel guerrillas, outside the control of the government, may seek to harm him. As the BIA noted, Velasquez's claim under the Convention rests on the same grounds as his application for asylum and withholding of deportation. The evidence of record does not compel the conclusion that Velasquez would more than likely be tortured if he is forced to return to Guatemala.

AFFIRMED.

---

5.  Taking a different tack, Velasquez argues on appeal that he is entitled to withholding of deportation based on a fear of persecution by the military. This claim is based on Vento's testimony that the military would view Velasquez with suspicion because he did not return to service after escaping and was last seen in the company of the guerrillas. The immigration judge rejected this claim, finding the record was not sufficiently developed to provide such a basis for fear of future persecution. We agree and find that the record would not support a finding that Velasquez has shown a clear probability that he would be subject to persecution on account of one of the statutorily enumerated grounds.