Martin Kinyanjui NJUGUNA,
Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–73143.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Filed June 28, 2004.

Duane M. Hamilton, Chow & Hamilton, Buena Park, CA, for the petitioner.

Alison R. Drucker, Attorney and John Andre, Senior Litigation Counsel, United States Department of Justice, Washington, DC, for the respondent.

Before HUG, JR., B. FLETCHER, and WARDLAW, Circuit Judges.

HUG, Circuit Judge:

We are called on to determine whether substantial evidence supports the Board of Immigration Appeals' ("BIA") determination that petitioner, Martin Kinyanjui Njuguna is ineligible for asylum and withholding of deportation. We hold that there is not substantial evidence supporting the BIA decision and accordingly grant the

petition for review.[1]

## Factual Background

Njuguna is a citizen of Kenya who entered the United States on a visitor's visa in 1987 and overstayed its expiration. He asserts a well-founded fear of persecution because of political opinion as the basis for his asylum eligibility. Njuguna's asserted fear of persecution stems from his assisting two Kenyan women escape from the Saudi royal family's employ while they were accompanying the family on a visit to the United States.

In October 1995, the Saudi royal family approached Nicholas Biwott, a highly placed Kenyan Minister, and requested that he refer two Kenyan women who could work for the family as domestic servants. Biwott asked his own maid, Nelius Hianyu, to provide two names. Hianyu referred Eunice Musembi and Priscilla Wainjiku to Biwott as possible candidates. The two women interviewed with the royal family, a princess of which was then in Kenya, and accepted employment as a part of the princess's household. The maids accompanied the family back to Saudi Arabia.

In March 1996, Musembi wrote a letter to Njuguna, whom she had known in Kenya before he left for the United States. The letter stated that she and Wainjiku were treated as slaves and subjected to sexual advances from male members of the household. Musembi stated that they would be in Los Angeles soon and asked for Njuguna's help in making an escape.

The household arrived in Los Angeles in April 1996, and Musembi and Wainjiku fled the hotel and took a cab to a gas station, where they called Njuguna. Njuguna picked them up and called his attorney, Peter Chow. Chow contacted the royal family and demanded that they return the maids' passports. He threatened to publicize the maids' stories unless the Saudis promptly cooperated. The Saudis sent the passports to the Kenyan consulate. Chow, Musembi, and Wainjiku went to the consulate, where Chow again threatened a press conference unless the Kenyan officials promptly turned over the documents. On surrendering the passports, the consular official stated, in Swahili, "there will be consequences for all of you." The two women applied for and received asylum in the United States.

At the time of these events, Njuguna and his wife shared an apartment with Sam Tuyoit, a fellow Kenyan. Tuyoit was the son of a Kenyan magistrate and a member of the Kalenjin tribe, as were Nicholas Biwott and then Kenyan president Moi. Njuguna was a Kikuyu, which tribe he asserts the Moi government oppressed. Njuguna related to Tuyoit the maids' account of their employment and how he had assisted them. Selling Kenyans into de facto slavery was, Njuguna opined, another example of the Moi government's corruption. Tuyoit became incensed, accused Njuguna of humiliating Kenya, and moved out. Njuguna believes that he returned to Kenya.

Events in Los Angeles apparently had some result in Kenya. Musembi wrote to Biwott's maid, Hianyu, and related the story of her employment and escape. The letter asserted that members of a Kenyan opposition party in the United States had facilitated her rescue. Kenyan authorities intercepted the letter and Hianyu was fired, arrested, and interrogated by police. She fled Kenya and received asylum in the United States.

---

1. Because we grant Njuguna's petition, we do not reach his contention that the BIA abused its discretion in denying his motion to reopen.

One year after the maids' escape, a man fitting Tuyoit's description appeared with police at the home of Njuguna's father.[2] The man accused the senior Njuguna of being involved in a plot in America to defame and humiliate the Kenyan government. The police ransacked the house, arrested Njuguna's father and held him for one week. Additionally, Njuguna's family has lost jobs and land to encroaching Masai tribes, the occurrence of which Njuguna believes Biwott engineered. Members of the Youthwingers, a violent progovernment faction, beat Njuguna's brother and informed him that periodic punishment would continue until they could reach Njuguna himself. Another relative suffered a machete attack. Njuguna's family has told him not to return to Kenya as his actions have placed them all in grave danger.

## Procedural Background

The INS served Njuguna with a notice to appear on April 13, 1998. Njuguna conceded removability, but requested asylum. The Immigration Judge ("IJ") found his testimony credible, but nonetheless determined that he had not demonstrated a well-founded fear of persecution on the basis of a protected ground, and was thus ineligible for asylum. The IJ stated that Njuguna, while believable, based his fear on unfounded speculation. Njuguna submitted as evidence the testimony of Musembi and the applications pursuant to which Musembi and Hianyu received asylum. The IJ stated that Musembi's story was inherently unbelievable. Two maids, the IJ reasoned, would not know of the Saudi royal family's travel plans far enough in advance to write the letter received by Njuguna. The opinion also found incredible that two "at-will" employees would need to travel to Los Angeles in order to "escape." The IJ found Njuguna statutorily ineligible for asylum and therefore also ineligible for withholding of removal.

Njuguna appealed to the BIA and additionally moved to reopen his case, so that he could present evidence of his brother's shooting in Kenya. The BIA acknowledged that the IJ made no adverse credibility finding, but concluded that Njuguna's fears relied on "implausible and unsupported speculation." The BIA affirmed the IJ's decision and denied Njuguna's motion to re-open.

## Jurisdiction

We have jurisdiction to review final orders of removal. 8 U.S.C. § 1252(a)(1). Jurisdiction over the order removing Njuguna arose when he timely filed a petition for review in this court. *See* 28 U.S.C. § 2349(a).

## Discussion

### I. Standard of Review

■ We review for substantial evidence the BIA's decision that an applicant has failed to establish eligibility for asylum. *Nagoulko v. INS*, 333 F.3d 1012, 1015 (9th Cir.2003); *Molina–Morales v. INS*, 237 F.3d 1048, 1050 (9th Cir.2001). Our review is limited to the administrative record underlying the BIA decision. 8 U.S.C. § 1252(b)(4)(A). Every asylum application is deemed to include a request for a withholding of removal. 8 C.F.R. § 208.3(b). We also review for substantial evidence the BIA's determination that Njuguna has failed to meet the higher burden required for withholding of removal. *Thomas v. Ashcroft*, 359 F.3d 1169, 1174 (9th Cir. 2004).

---

**2.** Njuguna has no first hand knowledge of events in Kenya, but related what his family had told him.

## II. Eligibility for Asylum

■ The Attorney General may grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is one who is unwilling or unable to return to his or her native country because of past persecution, or a well-founded fear of future persecution, on account of the individual's race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42)(A). Njuguna claims a well-founded fear of future persecution in Kenya because of his political opinion.

■ A well-founded fear has both subjective and objective components. *Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir.1998), *superseded by statute on other grounds as stated in Falcon Carriche v. Ashcroft*, 350 F.3d 845, 854 n. 9 (9th Cir. 2003). Njuguna established the subjective component with his credible testimony. *See Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir.1993). He has the burden of meeting the objective component by demonstrating a well-founded fear of persecution through credible, direct, and specific evidence. *See Velarde*, 140 F.3d at 1310. A "one in ten chance" that Njuguna will suffer persecution is enough. *Id.* (quoting *Montecino v. INS*, 915 F.2d 518, 520 (9th Cir.1990)).

■ The treatment of Njuguna's Kenyan relatives amounts to persecution. They have been imprisoned, beaten, cut with machetes, and threatened with further physical harm. *See Navas v. INS*, 217 F.3d 646, 658 (9th Cir.2000) (petitioner demonstrated persecution where he had been threatened with death, two of his family members were murdered, and his mother beaten); *Duarte de Guinac v. INS*, 179 F.3d 1156, 1161 (9th Cir.1999) (physical harm consistently treated as persecution). Njuguna personally has not suffered persecution simply because his would be abusers cannot reach him. The lack of past persecution against him does not foreclose asylum eligibility. *Gonzalez v. INS*, 82 F.3d 903, 909–910 (9th Cir.1996) (violence against family members supports a petitioner's well-founded fear if linked to petitioner). Some of the attacks against Njuguna's family were accompanied by specific threats against Njuguna.

■ In order to qualify for asylum based on a well-founded fear of persecution, the fear of persecution must be on account of one of the statutory grounds, here, political opinion. An asylum applicant may establish political opinion as the basis for persecution in three ways: 1) affirmative political beliefs; 2) political neutrality where such is hazardous; and 3) an imputed political opinion. *Sangha v. INS*, 103 F.3d 1482, 1488–89 (9th Cir. 1997). Njuguna has established an affirmative opinion in that he opposed the Moi government by his own testimony including his statements to Tuyoit. That Njuguna, however, subjectively holds an anti-Moi opinion is not, by itself, enough to establish that any future persecution would be "on account" of this opinion. He must establish that the political opinion would motivate his potential persecutors. An applicant need not establish this with direct evidence; compelling circumstantial evidence is enough. *INS v. Elias–Zacarias*, 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The only reasonable conclusion to be drawn from the administrative record is that events in Kenya were probably caused, at least in part, by Njuguna's words and actions in the United States.

■ Retaliation against an individual who has acted against government corruption can be "on account of" political opinion. *See Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir.2000). Njuguna characterized his assistance of Musembi and Wainji-

ku as an act against the Moi regime's corruption. So long as any future attacks would be at least in part retaliation for the rescue, they form the basis for asylum eligibility. *Borja v. INS*, 175 F.3d 732, 736 (9th Cir.1999) (en banc).

■ The IJ determined (and the BIA accepted) that Njuguna testified credibly. Yet both the IJ and the BIA stated that large parts of his claim were "implausible." The BIA's entire analysis of Njuguna's asylum claim is that his credible testimony was "unsupported and implausible speculation." [3] Njuguna lacks first hand knowledge of events in Kenya, but the IJ's credibility finding compels a conclusion that he is accurately relating his family's accounts of events in Kenya. *Cf. Ladha v. INS*, 215 F.3d 889, 901 (9th Cir.2000) (no corroboration required where alien's testimony is unrefuted and credible).

Faced with Njuguna's credible testimony, we disagree with the BIA that his claim is implausible speculation. Given the absence of any contradictory evidence, the testimony of Musembi, Hianyu's asylum application, and the country report which supports Njuguna's characterization of the conditions in Kenya, Njuguna's fears were not speculative. *See Gafoor v. INS*,

231 F.3d 645, 650–51 (9th Cir.2000) (the applicant need only produce evidence from which it is reasonable to believe that the harm is motivated in part by a protected ground); *Borja*, 175 F.3d at 736 (same).

■ It would be one matter for the IJ to have concluded that Njuguna was not credible. Assuming Njuguna to be telling the truth, however, one cannot reasonably conclude that his Kenyan relatives have repeatedly lied or mis-characterized events in the absence of any apparent motive to do so and any contradictory evidence. The finder of fact may not circumvent a credibility finding by labeling compelling circumstantial evidence "speculative." Substantial evidence does not encompass the BIA's own speculation.[4] *See Shoafera v. INS*, 228 F.3d 1070, 1075 (9th Cir.2000); *Lopez–Reyes v. INS*, 79 F.3d 908, 912 (9th Cir.1996). Any reasonable finder of fact would be compelled to conclude that Njuguna had a well-founded fear of persecution, and is therefore eligible for asylum.

## III. Withholding of Removal

■ Having found no substantial evidence underlying the BIA's asylum determination, we turn to its conclusion that

3. At oral argument the INS insisted that the BIA did not adopt the IJ's decision. The section of the BIA decision concerning eligibility for asylum, in its entirety, reads "[t]he Immigration Judge essentially found that the respondent testified credibly. Thus, we need not reach the question of whether the respondent should have corroborated his claim. Nonetheless, there is no evidence of past persecution in this case. The respondent also relies entirely upon unsupported and implausible speculation when asserting that he would suffer persecution on account of a protected ground in Kenya." (citations omitted).

4. We also find it disturbing that Musembi, Wainjiku, and Hianyu were granted asylum, but Njuguna was found to be ineligible. The INS must give each asylum case individualized scrutiny, but it is a foundation of the rule

of law that similarly situated individuals be treated similarly. The IJ's opinion discredits at length Musembi's account of her time in Saudi Arabia and ultimate escape. First, were we reviewing the IJ's opinion, speculation in the absence of contradictory evidence about the employment conditions of Saudi domestic servants does not constitute substantial evidence. Second, we have previously noted inconsistent treatment of asylum applicants. *See Wang v. Ashcroft*, 341 F.3d 1015, 1019 n. 2 (9th Cir.2003) (greeting with incredulity the INS's assertion that a reviewing court need not concern itself with the inconsistency where the INS denied asylum to a woman subjected to coercive population control methods, but granted asylum to her husband on the basis of the woman's experience).

Njuguna did not meet his burden for the mandatory remedy of withholding of removal. In contrast to asylum, where the "possibility" of persecution is sufficient, to receive withholding of removal, Njuguna must show that it is more probable than not that he will face persecution on account of a protected ground upon his deportation to Kenya. *INS v. Stevic*, 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Velarde*, 140 F.3d at 1309. As mentioned above, Njuguna lacks direct knowledge of events in Kenya, but the evidence that he presents is compelling.

Njuguna expressed his opposition to the Moi regime to his politically well-connected roommate, Tuyoit. Tuyoit told others that he would make Njuguna pay. When Njuguna's attorney, Musembi, and Wainjiku went to the Kenyan consulate to pick up the women's passports, a Kenyan official told them that they "all" would "face consequences." Njuguna submitted evidence that these were not idle threats. Government police ransacked Njuguna's family home in Kenya and imprisoned and beat his father. Pro-government militias attacked Njuguna's brother. The perpetrators of both of these attacks accompanied their abuse with accusations that members of the family had joined with foreigners to defame and humiliate Kenya in the United States. Credible testimony of multiple witnesses related to the IJ all of the events occurring in the United States and the IJ found that Njuguna credibly testified to what his relatives told him of events in Kenya.

We have found that similar evidence compels the conclusion that the petitioner is entitled to withholding of removal. In *Salazar–Paucar v. INS*, we held that threats from Shining Path guerrillas combined with harm inflicted on family members constituted past persecution and thus entitled the petitioner to a presumption that future persecution was likely. 281 F.3d 1069, 1074–75 (9th Cir.2002). Similarly, in *Tagaga v. INS* the record compelled the finding that future persecution was more likely than not where military officials threatened to try the petitioner for treason upon his return. 228 F.3d 1030, 1035 (9th Cir.2000).

There is no evidence that the abuse inflicted upon Njuguna's family came from a source other than the Moi regime. *See Cardenas v. INS*, 294 F.3d 1062, 1066 (9th Cir.2002) (holding that record compelled conclusion that telephoned threat came from persecutors in absence of evidence to the contrary). It would be unrealistic to expect Njuguna's Kenyan relatives to appear and to testify about their treatment at the hands of the government and pro-government militias. We cannot find substantial evidence where there exists only speculation. Given Njuguna's credibility and the lack of any contradictory evidence, the BIA's denial of withholding of removal is not supported by substantial evidence, and we grant Njuguna's petition on that ground as well.

**Conclusion**

We grant Njuguna's petition for review. We vacate the BIA's denial of withholding of removal and asylum, grant withholding of removal, hold Njuguna eligible for asylum, and remand to the Attorney General to exercise his discretion whether to grant asylum.

PETITION FOR REVIEW GRANTED. REVERSED AND REMANDED.