## MATTER OF FUENTES

### In Deportation Proceedings

### A-24841098

*Decided by Board April 18, 1988*

(1) Dangers which arise from the nature of employment as a policeman in an area of domestic unrest (*e.g.*, attacks because they are viewed as extensions of a government's military forces) do not support a claim of a well-founded fear of "persecution" within the scope of section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (1982).

(2) If policemen or guerrillas are considered to be victims of persecution based solely on an attack by one against the other, virtually all participants on either side of an armed struggle could be characterized as "persecutors" of the opposing side and would thereby be ineligible for asylum or withholding of deportation.

(3) Status as a former policeman is an immutable characteristic, and mistreatment occurring because of such status in appropriate circumstances could be found to be persecution on account of political opinion or membership in a particular social group.

(4) Although an applicant for asylum, who claims he may be subject to persecution because of his status as a former policeman, need not establish the exact motivation of a "persecutor" where different reasons for actions are possible, he does bear the burden of establishing facts on which a reasonable person would fear that the danger arises on account of his race, religion, nationality, membership in a particular social group, or political opinion.

(5) Even if an asylum claim is assumed to be otherwise demonstrated, eligibility for asylum based on nongovernmental action may not be adequately established where the evidence of danger is directed to a very local area in the country of nationality.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Vincent J. Agresti, Esquire
56-58 Ferry Street
Newark, New Jersey 07105

ON BEHALF OF SERVICE:
David Dixon
Appellate Counsel

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated August 14, 1984, the immigration judge found the respondent deportable as charged, denied his applications for asylum and withholding of deportation, but granted him voluntary departure. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a 33-year-old native and citizen of El Salvador who entered the United States in 1982 without inspection. He conceded deportability at his hearing. The sole issue on appeal concerns his eligibility for asylum and for withholding of deportation.

The respondent maintains that he will be persecuted and harmed by leftist insurgents in El Salvador on account of his association with the Government of El Salvador. He testified that he was a member of the national police in El Salvador from 1967 to 1980 and a guard at the United States Embassy from 1980 until 1982. In both capacities, the respondent and his fellow officers were attacked by guerrillas on several occasions. In one incident, for example, while checking the highways, guerrillas assaulted his police group and killed one of his fellow officers. On another occasion, four guerrillas in an automobile machine-gunned the Embassy while he was standing guard. When the guerrillas returned for a second attack, they were captured.

The respondent further testified that many inhabitants of his hometown had joined the guerrillas and they were very active in that area. The guerrillas there knew him by name, knew he was a member of the police, and had threatened him personally while he was a member of the national police. He stated that the government was unable to protect him in El Salvador and he had fled to avoid being killed. The respondent additionally testified that two of his relatives, who had been "local commanders," had committed suicide because of their fear of the guerrillas.

In addition to his own testimony, the respondent presented two witnesses who had known him in El Salvador. They testified that the situation in his hometown was very dangerous; that it was an area of ongoing fighting between the military and the guerrillas; that the guerrillas there killed people for "having been" in the military; that the guerrillas knew of the respondent's past service; that he would be punished or "disappear" if he returned to his hometown even if he was no longer in service; and that the government could not protect him. One of the two witnesses also stated that the guerrillas had the names of the people who had been in the service and would immediately find out if the respondent returned to his hometown.

An alien who is seeking withholding of deportation from any country must show that his "life or freedom would be threatened

in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h)(1) (1982). In order to make this showing, the alien must establish a "clear probability" of persecution on account of one of the enumerated grounds. *INS* v. *Stevic,* 467 U.S. 407 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution. *Id.* at 429–30.

In order to establish eligibility for a grant of asylum, an alien must demonstrate that he is unwilling or unable to return to his country because of persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Section 208 of the Act, 8 U.S.C. § 1158 (1982). The Board previously took the position that, as a practical matter, the showing required to establish a well-founded fear of persecution for asylum purposes was the same as that required to establish a clear probability of persecution for purposes of withholding of deportation. *Matter of Acosta,* 19 I&N Dec. 211 (BIA 1985). The Supreme Court has rejected this approach in *INS* v. *Cardoza-Fonseca,* 480 U.S. 421 (1987). In that case, the Court found it reasonable to assume that Congress intended to make it more difficult to establish absolute entitlement to withholding of deportation under section 243(h) than to establish mere eligibility for asylum under section 208 of the Act. *Id.* at 443–44. In *Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987), the Board reexamined the burden of proof in asylum cases in light of the Supreme Court's holding. In that case, it was held that an applicant for asylum has established a well-founded fear if a reasonable person in his circumstances would fear persecution on account of one of the grounds specified in the Act. We noted that a reasonable person may fear persecution even where its likelihood is significantly less than clearly probable. In considering asylum claims, an alien's own testimony may be sufficient, without corroborative evidence, to prove a well-founded fear of persecution where that testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.

Based upon our review of the record, we find that the respondent has failed to demonstrate his eligibility for asylum and, consequently, also has not satisfied the higher burden of proof necessary to establish eligibility for withholding of deportation.

There are two related, but distinct, bases underlying this respondent's asylum claim. The first is his fear arising from the events that occurred while he was a policeman and guard in El Sal-

vador prior to his departure in 1982. The second aspect of his claim is the fear that he will face persecution as a *former* national policeman if he returns to El Salvador.

We do not find that the respondent can demonstrate a well-founded fear of persecution "on account of" one of the grounds specified in the Act based on the events that occurred while he was a policeman and guard in El Salvador from 1967 to 1982. In so holding, we find that dangers faced by policemen as a result of that status alone are not ones faced on account of race, religion, nationality, membership in a particular social group, or political opinion.

There is presently a political struggle ongoing in El Salvador, the ultimate objective of which is supremacy of one side over the other. The guerrillas, whom the respondent fears, appear intent on overthrowing the government. The government's obvious intent is to thwart the guerrillas' objectives. Unfortunately, violence appears inherent to such revolutionary struggles. Guerrillas often engage in violence, not only against military targets, but also against civilian institutions that, whether intentionally or not, support domestic stability and the strength of the existing government. Policemen are by their very nature public servants who embody the authority of the state. As policemen around the world have found, they are often attacked either because they are (or are viewed as) extensions of the government's military forces or simply because they are highly visible embodiments of the power of the state. In such circumstances, the dangers the police face are no more related to their personal characteristics or political beliefs than are the dangers faced by military combatants. Such dangers are perils arising from the nature of their employment and domestic unrest rather than "on account of" immutable characteristics or beliefs within the scope of sections 101(a)(42)(A) or 243(h) of the Act, 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h) (1982). Accordingly, we do not find that the respondent has demonstrated a well-founded fear of persecution "on account of" one of the grounds protected by the Act by virtue of the attacks and dangers he faced as a policeman and guard in El Salvador prior to his departure in 1982.

We note that if one were to find that a policeman or guerrilla was a victim of "persecution" within the scope of the Act based solely on the fact of an attack by one against the other, then it would follow that the attacker had participated in an act of "persecution" that would forever bar him or her from relief under sections 208(a) or 243(h). Such a "broad" interpretation of the concept of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion" would have the actual effect of greatly narrowing the group of persons eligible

for asylum and withholding. Virtually all participants on either side of an armed struggle could be characterized as "persecutors" and would thereby be ineligible for asylum or withholding of deportation. The concept of "persecution" has not been so broadly defined.

The second aspect of the respondent's claim is his fear arising from his status as a former member of the national police. This is in fact an immutable characteristic, as it is one beyond the capacity of the respondent to change. It is possible that mistreatment occurring because of such a status in appropriate circumstances could be found to be persecution on account of political opinion or membership in a particular social group. For example, where hostilities have ceased, an asylum applicant who is subject to mistreatment because of a past association may be able to demonstrate a well-founded fear of persecution on account of a ground protected by the Act. We note that an applicant does not bear the unreasonable burden of establishing the exact motivation of a "persecutor" where different reasons for actions are possible. However, an applicant does bear the burden of establishing facts on which a reasonable person would fear that the danger arises on account of his race, religion, nationality, membership in a particular social group, or political opinion. The Government may also introduce supporting or contradictory evidence regarding both the potential for mistreatment and the reasons therefor.

In this case, the facts surrounding the possible danger faced by the respondent if he returns to his hometown and, more specifically, the reasons for that danger are not clearly developed. Although the respondent testified that he fears harm if he returns to El Salvador, his testimony relates to events that occurred while he was an active member of the government forces prior to his departure from El Salvador. One of his witnesses stated that the respondent would face danger if he returned to his hometown but was unable to testify to any instances of individuals endangered for having been in the military service. The final witness, however, did testify that the guerrillas in the respondent's hometown knew of those "who served in the military" and the respondent would "disappear" if he returned. But this witness also testified that the town was in a situation of strife between the army and the guerrillas with "terrible" fighting ongoing.

On this record, we do not find that the respondent has adequately demonstrated a well-founded fear of "persecution" on account of his status as a former policeman; rather, the record would indicate a danger that one with ties to a participant in a violent struggle might expect if he ventures into an area of open conflict. We note

that participants in an ongoing armed struggle may well have reasons for refusing to tolerate the presence of "past" opponents in territories under their control or under dispute, unrelated to persecution on account of a protected status (e.g., the most fundamental question of whether or not such individuals are in fact no longer taking part in the hostilities either overtly or covertly).

Even if one assumes the respondent's claim in this respect has been otherwise demonstrated, however, we do not find an asylum claim based on nongovernmental action adequately established where the evidence the respondent presents is directed to so local an area of his country of nationality. Although the respondent expressed a general fear of returning to El Salvador, his specific evidence focuses on the danger he would face if he returned to his hometown, where he is known by guerrillas and the conflict is still ongoing. The record in fact indicates that the respondent resided in San Salvador for 2 years prior to his departure from El Salvador and only visited his mother on weekends at his hometown when he had permission.

Because we do not find that the respondent has demonstrated his eligibility for the requested relief from deportation, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the immigration judge's order and in accordance with our decision in *Matter of Chouliaris,* 16 I&N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.