

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-20-2005

# Ram-Rajban v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1050

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ram-Rajban v. Atty Gen USA" (2005). *2005 Decisions.* Paper 78.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/78

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1050

GANESH RAM-RAJBAN,
                                                Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A79-740-885

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2005

Before: BARRY and AMBRO, <u>Circuit Judges</u>, and POLLAK,[*] <u>District Judge</u>

(Opinion Filed:  December 20, 2005)

OPINION

BARRY, <u>Circuit Judge</u>

    Ganesh Ram-Rajban, a native and citizen of Guyana, petitions for review of a

---

[*]The Honorable Louis H. Pollak, District Judge, United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

final order of removal of the Board of Immigration Appeals ("BIA"). We will deny the petition.

## I.

On August 26, 2001, Ram-Rajban arrived in San Juan, Puerto Rico with improper documentation. Immigration and Customs enforcement officials detained him. After a September 27, 2001 interview, an official found that Ram-Rajban had established a credible fear of persecution. Ram-Rajban applied for asylum and withholding of removal and was paroled and permitted to press his case in Newark, New Jersey. It was in Newark on September 26, 2003 that he came before an immigration judge ("IJ").

Ram-Rajban's difficulties, he testified, began with the March 2001 elections in Guyana. The People's Progressive Party, garnering most of its support from the Indo-Guyanese population, retained power. The opposition party, the People's National Congress ("PNC"), found its political base among Afro-Guyanese citizens. There was significant post-election social unrest. Ram-Rajban testified that his status as Indo-Guyanese and a police officer made him a target of violence by supporters of the PNC.

During the hearing, the relative importance of the two claimed bases of persecution was explored. Ram-Rajban had the opportunity to explain why he was targeted, particularly why he believed that Afro-Guyanese citizens would threaten him,

and he testified that it was "[b]ecause [he] was in the police force."[1] Ram-Rajban's concerns appeared focused on those individuals he had arrested and what they would do upon their release.

Ram Rajban testified that the threats did not begin until after the election and that Indo-Guyanese citizens, such as himself, were targeted. He stated that the police force was run primarily by Afro-Guyanese who did nothing about the threats against him because he was Indo-Guyanese and a supporter of the ruling party.[2] He admitted, however, that not all the police officers attacked and killed during the post-election unrest were Indo-Guyanese. Moreover, he indicated that relatives of his had been killed in ethnic violence, creating an inference that he would be subject to future persecution on account of his ethnicity.

---

[1]*See* AR67 (Q: "[W]hat made you leave Guyana?" A: "Because I was threatened?" Q: "Who was it that threatened you." A: "The black people." Q: "And why was it that they threatened you?" A: "Because I was in the police force and when the PPP win the election and after we was patrolling, that's the reason why they would started. Make a lot of arrests and that's when they started [to] threaten[ ] me."); AR68 ("Q: "Now why do you say, you said that you were threatened by black people." A: "Yeah." Q: "Why is it that you were threatened by black people?" A: "Because due to the arrests that we make, . . . when we patrolling nights . . . ."); AR68-69 ("Q: So you were, you feel that you were threatened by the black people because you were conducting your duties as a police officer?" A: "Yes."); AR71 (Q: And when you go out there, would you wear a police uniform?" A: "Yeah."); AR75 (Q: "What if any types of problems did you have in Guyana because you were a police officer? What happened to you?" A: "I was threatened several times. By the people to kill me and my family, burn my property down. That's the reason why I had to leave and come away here."); AR96; AR97 (numbers those who threatened him at approximately eight people).

[2]Ram-Rajban's service with the police force was voluntary, prompting the IJ to inquire why he did not simply resign.

3

We have jurisdiction pursuant to 8 U.S.C. § 1252(a) to review final orders of removal. Where, as here, the BIA affirms the IJ's order of removal without a substantive opinion, we review the IJ's decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002).

## II.

The evidence does not compel a finding that Ram-Rajban was threatened because he was Indo-Guyanese. The IJ referenced the racial tension and social unrest in Guyana during the relevant period, as borne out by Ram-Rajban's testimony and documentary evidence. Despite such conditions, there was certainly more than sufficient evidence to support the IJ's determination that the threats to Ram-Rajban's safety arose out of his status as a police officer. *See*, *e.g.*, *supra* note 1. Although newspaper articles found in the record report racial tensions, they also discuss the targeting of police officers as a group in a particularly violent region of Guyana.

Ram-Rajban takes issue with the IJ's statements during the hearing and his observation that the population of Guyana "seems to be evenly split" between Indo-Guyanese and Afro-Guyanese. These statements, however, appear to be the IJ's way of discussing relative demographic parity between the relevant groups, rather than any finding that the country was comprised only of those two groups in equal number. We question the IJ's suggestion that the ineluctable consequence of relative parity is that the winning party must have received support from opposition party members. (*See* A89 ("If you have 50-50, it's impossible to win an election if you only have the support of your

4

own group.")) One group may have higher voter turnout, the groups may be essentially equal in size but not exactly so, or there could be splinter parties. It is not, however, apparent how, if at all, the IJ's discourse on this point during the hearing was integrated into his analysis, and we do not believe that it calls into question his ultimate finding regarding the basis of the threats, namely, that they arose from Ram-Rajban's position as a police officer and not his ethnicity.

Having so found, the IJ determined that Ram-Rajban was not entitled to asylum. To obtain asylum, an applicant must "demonstrat[e] that she has a well-founded fear of future persecution by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." *Gao*, 299 F.3d at 272. The persecution must be on "account of" a statutorily protected ground. The statutorily protected grounds are "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Relying on *Matter of Fuentes*, 19 I. & N. Dec. 658 (B.I.A. 1988), the IJ found that status as a police officer did not fall within the scope of any of the statutorily protected grounds. In *Matter of Fuentes*, the BIA found that "perils arising from the nature of [police] employment and domestic unrest" fall outside the scope of statutory protections. *Id.* at 661.[3] That reasoning is consistent with our adoption of a definition of "social

---

[3]The BIA did find that under certain circumstances status as a *former* police officer – an immutable characteristic – might fall within the protections of the statute. *Fuentes*, 19 I. & N. Dec. at 662. Ram-Rajban directs us to no evidence that he would be persecuted

5

group" that has at its core "an immutable characteristic . . . that the members [of the social group] cannot or should not have to change because it is fundamental to their identity." *Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993). Ram-Rajban argues that his case is distinguishable from *Matter of Fuentes* because he was not persecuted solely because he was a police officer. He contends here, as he did before the IJ, that the primary reason he was threatened was his ethnicity. The IJ rejected that contention, finding that the "most important salient element of the application is the fact that [he] was a police officer." (A30-31.)

Ram-Rajban, in his attempt to move the analysis into the realm of legal interpretation, in essence characterizes the IJ's determination as a ruling as a matter of law that status as a police officer precludes relief. It would be legal error for the IJ to have found that, despite persecution based on ethnicity, simple status as a police officer would prevent a grant of asylum or withholding of removal. The asylum applicant is not required to establish that the persecution stemmed exclusively from a protected ground; rather, he or she must show only that "a reasonable person would fear that the danger arises on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Matter of Fuentes*, 19 I. & N. Dec. at 662. Even if he was targeted because he was a police officer, Ram-Rajban could succeed if it were reasonable to believe that the threats were "also motivated, at least in part," by a protected ground.

---

because of past association with the police force.

6

*Chang v. INS*, 119 F.3d 1055, 1065 (3d Cir. 1997). The IJ did not find that Ram-Rajban's status as a police officer *per se* precluded relief; rather, he determined that the specific dangers Ram-Rajban faced arose out of his activities as a police officer. In sum, the IJ was not convinced that Ram-Rajban's difficulties were because he was Indo-Guyanese or because he was an *Indian* police officer.[4] The evidence does not compel a different finding.

## IV.

We will deny the petition for review.

---

[4]*Cf. Naul v. Ashcroft*, 106 Fed. Appx. 791, 797 (3d Cir. 2004) (recounting that Indo-Guyanese petitioner testified that "the cause of the . . . encounter was his ethnicity, perhaps in combination with his profession" as "specifically indicated" by "his Afro-Guyanese assailants" who "did not want an *Indian* mechanic working in their village") (emphasis in original).