

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-2007

# Altidor v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3165

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Altidor v. Atty Gen USA" (2007). *2007 Decisions*. Paper 441.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/441

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 06-3165

_____

RONY ALTIDOR
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
Respondent

_____

On Petition for Review of an Order of the Board of Immigration Appeals
No. A25-432-984
Immigration Judge:  Hon. Miriam Mills

_____

Argued June 13, 2007

BEFORE:  McKEE, STAPLETON and NYGAARD
Circuit Judges

(Opinion Filed:  September 13, 2007)

_____

Martin A. Kascavage (Argued)
Schoener & Kascavage
400 Market Street, Suite 420
Philadelphia, PA  19106
 Attorney for Petitioner

Jeffrey Clair (Argued)

Room 3127
U.S. Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W.
Washington, D.C.  20530
  and
Richard M. Evans
Paul Fiorino
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
  Attorneys for Respondent

---

OPINION OF THE COURT

---

STAPLETON, <u>Circuit Judge</u>:

Rony Altidor petitions this court for review of a final order of removal of the

Board of Immigration Appeals ("BIA").  For the reasons that follow, we will deny the

petition.

## I.  Background

Altidor is a native and citizen of Haiti.  He came to the United States from Haiti in

November 1999, and received a visitor's visa authorizing him to stay for six months.

Altidor overstayed his visa, however, and applied for asylum in October 2001.  In

February 2002, the Immigration and Naturalization Service (now the Department of

Homeland Security) served him with a Notice to Appear and instituted removal proceedings against him. Altidor conceded removability and requested asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In December 2004, the Immigration Judge ("IJ") held a hearing at which Altidor gave the following testimony in support of his claims for relief.

Altidor's claims are primarily based on incidents that occurred while he was serving as a police officer in the Haitian National Police ("HNP"). In November 1998, Altidor arrested an individual for illegal possession of a firearm, but was subsequently ordered to release the suspect by his superior, Inspector Gerol. Altidor later learned that the suspect, who vowed to retaliate against him, was a good friend of Inspector Gerol.

In December 1998, Altidor was involved in an automobile accident in front of a church where he had taken his ill son for spiritual treatment. As Altidor discussed the accident with the owner of the other automobile, he was accosted by a man wielding a knife and demanding money for the accident. In response, Altidor, who was dressed in plain clothes but still on duty, announced that he was a police officer, pulled out his gun, and fired warning shots into the air. Several of the assailant's associates thereafter surrounded Altidor and set fire to his car. The group fled the scene, however, after an eyewitness called the police. Altidor later learned that the assailant and his associates were members of a gang.

Altidor promptly filed a police report addressing the December 1998 incident. Approximately two weeks later, Inspector Gerol and other police officials questioned

3

Altidor about discharging his firearm during the encounter. Gerol also expressed his displeasure with Altidor for arresting his friend in November 1998, and accused Altidor of being a CIA agent because he had received police training in the United States.[1]

According to Altidor, Gerol and his associates thereafter arrested him without explanation. They sent him to a prison that housed gang members where he was beaten by the inmates. Three weeks later, Altidor was transferred to the national penitentiary and detained for another eight months. While imprisoned in the national penitentiary, Altidor was attacked by inmates who discovered that he had worked as a police officer. In September 1999, a judge withdrew the arrest warrant that had been issued against Altidor and he was released from prison.

Upon his release, HNP transferred Altidor from Port-au-Prince to Gonaives, where he resumed his duties as a police officer. While Altidor was working in Gonaives, he learned that gang members had on several occasions come looking for him at the residence he still maintained in Port-au-Prince, and he also received threatening telephone calls. Altidor believed that the gang members were looking for him because of his involvement in the December 1998 incident. In November 1999, Altidor fled to the United States.

At the close of the hearing, the IJ denied Altidor's applications for asylum, withholding of removal, and CAT protection. The IJ declined to consider the merits of

---

[1]Altidor had previously traveled to the United States on two occasions, "once as a visitor and once for police training." App. at P2; A.R. 205.

Altidor's asylum claim, which had been filed out of time, because he did not qualify for an exception to the one-year limitations period. *See* 8 U.S.C. § 1158(a)(2)(D). In rejecting his claim for withholding of removal, the IJ found that Altidor had failed to establish that any persecution he suffered was "on account of" a protected ground under 8 U.S.C. § 1253(h). The IJ denied Altidor's claim for CAT relief because he had not shown that there was a reasonable likelihood he would be tortured if he returned to Haiti. The IJ found, however, that Altidor was eligible for voluntary departure.

Altidor appealed to the BIA, which adopted and affirmed the IJ's decision. This petition for review followed.[2]

## II. Asylum

Altidor does not dispute that his asylum application was untimely filed. Instead, he challenges the IJ's determination that he was not entitled to tolling of the limitations period under 8 U.S.C. § 1158(a)(2)(D), arguing that the IJ improperly discredited his explanation for the filing delay. We, however, lack jurisdiction to review the IJ's discretionary determination that Altidor was ineligible for tolling under the asylum statute. *See* 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any

---

[2]We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the BIA adopted and affirmed the IJ's decision, we review the IJ's decision. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). This court reviews the IJ's findings and conclusions for "substantial evidence," and will uphold them unless the evidence "was so compelling that no reasonable factfinder could fail to find the alien eligible for [relief]." *Lie v. Ashcroft*, 396 F.3d 530, 534 n.3 (3d Cir. 2005) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 480 (1992)).

determination of the Attorney General under [8 U.S.C. § 1158(a)(2)]"); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006) ("[D]espite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would excuse his untimely filing [pursuant to § 1158(a)(2)(D)].") (citations omitted). Accordingly, we do not consider Altidor's challenge to the IJ's disposition of his asylum claim.

### III. Withholding of Removal

To obtain mandatory withholding of removal, an alien must establish by a "clear probability" that his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion in the proposed country of removal. *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003). An alien can establish eligibility for withholding of removal by either demonstrating past persecution or by showing a likelihood of future persecution. 8 C.F.R. § 1208.16(b); *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998). To show past persecution, which is the focus of Altidor's claim here, an alien must demonstrate "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily protected grounds; and (3) is committed by the government or forces the government is either unable or unwilling to control." *Konan v. Attorney General*, 432 F.3d 497, 501 (3d Cir. 2005) (citation omitted).

Altidor contends that the IJ erred in concluding that his alleged persecution by his

corrupt police superiors and the gang members did not constitute persecution on account of a "political opinion," which he characterizes as his enforcement of the law without corruption. In rejecting this argument, the IJ noted that Altidor had testified that he was not politically active, and that there was "no evidence that those who harmed [him] were politically motivated." App. at 10. The IJ noted in particular the lack of evidence that "political ideologies motivat[ed] [Altidor's] wrongful detention" by his police superiors. *Id.* The IJ concluded that, at most, the record reflected nothing more than "some professional jealousy against [Altidor] by his superiors" because he had trained in the United States. *Id.*

The IJ's findings in this respect are supported by substantial evidence. The record shows that Altidor was targeted by his alleged persecutors for his conscientious police work rather than on account of any political opinion he held or that was imputed to him. Although "[r]efusal to accede to government corruption can constitute a political opinion" in certain circumstances, *Grava v. INS*, 205 F.3d 1177, 1181 (9th Cir. 2000) (police officer's exposure and prosecution of corruption that "is inextricably intertwined with governmental operation" may amount to an expression of political opinion), there is no suggestion that Altidor's faithful discharge of his ordinary police duties was motivated by anything other than his own professional ethics, or that his persecutors were motivated by anything other than personal retribution. In fact, through his counsel, Altidor admitted at the hearing that he was persecuted simply because he "uph[e]ld the rule of the law" in his capacity as a police officer. A.R. at 95. In short, Altidor's mere performance of his

7

ordinary police duties without corruption does not constitute a political opinion or imputed political opinion for purposes of withholding of removal, as the IJ correctly found. *See Konan*, 432 F.3d at 504 (attack of police officers "because they are police officers," rather than "because they are [government] loyalists," is not on account of a political opinion); *Marku v. Ashcroft*, 380 F.3d 982, 989 (6th Cir. 2004) (upholding denial of asylum where alien "presented no evidence to compel the conclusion that [her supervisor] or anyone else knew that she was even opposed to government corruption or had any other political opinion").

For similar reasons, the IJ also correctly concluded that the alleged persecution suffered by Altidor was not on account of his membership in a "particular social group." As a general matter, "particular social group," as the phrase is used in the immigration statutes, refers to "a group of persons all of whom share a common, immutable characteristic." *Escobar v. Gonzales*, 417 F.3d 363, 366 (3d Cir. 2005) (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). Contrary to Altidor's suggestion, the BIA has recognized that active members of a police force do not constitute a "particular social group" because the "dangers faced by policemen as a result of that status alone . . . are perils arising from the nature of their employment and domestic unrest rather than 'on account of' immutable characteristics or beliefs." *Matter of Fuentes*, 19 I. & N. Dec. 658, 661 (BIA 1988). Although Altidor contends on appeal that the inmate attacks he suffered while imprisoned in the national penitentiary were on account of his status as a *former* police officer, which the BIA has recognized to be a protected social group, *see id.* at 662

8

(observing that alien's status as former policeman "is in fact an immutable characteristic, as it is one beyond the capacity of the [alien] to change"), the current record fails to demonstrate (1) that the harm suffered by Altidor while imprisoned in the national penitentiary amounted to persecution, or (2) that the government acquiesced in any such incidents of harm.

In sum, substantial evidence supports the IJ's denial of relief on Altidor's withholding of removal claim.[3]

## IV. CAT Protection

"An applicant for relief on the merits under [Article 3] of the [CAT] bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). 8 C.F.R. § 208.16(c)(3) provides that:

> In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
> (i) Evidence of past torture inflicted upon the applicant;
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights within

---

[3]Altidor also challenges certain adverse credibility determinations made by the IJ in assessing his claim for withholding of removal. As the IJ recognized, however, even assuming that Altidor's testimony was wholly credible, his withholding of removal claim still must fail because he cannot show that his alleged persecution was "on account of" a statutorily protected ground.

the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

The standard for relief under the CAT "has no subjective component, but instead requires the alien to establish, by objective evidence, that he is entitled to relief." *Id.* at 175. We have stated that: "For an act to constitute torture under the [CAT] and the implementing regulations, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005) (citations omitted).

Altidor's CAT claim was principally based on inmate attacks he allegedly suffered while in prison. In rejecting his claim, the IJ found that Altidor had failed to articulate with sufficient specificity the nature of the harm inflicted upon him in prison, noting in particular that Altidor's testimony that he "endured all sorts of humiliation in the hands of prisoners" and that "[e]veryone was shocked to see how I was being treated [in jail]" was too vague to support a claim of torture. A.R. at P59; A.R. at 390.

Altidor did, however, provide at least some additional information about the harm he allegedly suffered while in prison. In an asylum interview that was submitted as an exhibit at the hearing, Altidor stated under oath that "one of the prisoners hit me in the eye and I still have problems with my vision." App. at P3. Nevertheless, this isolated incident falls far short of satisfying the narrow definition of torture under CAT. In short,

10

even assuming for the sake of argument that Altidor would likely be imprisoned if he returned to Haiti, substantial evidence supports the IJ's finding that Altidor failed to demonstrate that he would more likely than not be tortured in prison. The IJ, therefore, properly denied Altidor's claim for CAT relief.[4]

## V. Conclusion

For the foregoing reasons, we will deny Altidor's petition for review.

---

[4]Altidor also suggests that the IJ denied him a full and fair opportunity to testify in support of his claims for relief at the administrative hearing. Although Altidor's hearing testimony spans over one-hundred pages of transcript, he insists that the IJ improperly limited his testimony by telling him to "get to the point" on one occasion, A.R. at 87, and making other similar remarks during the course of the hearing. Because Altidor failed to raise this claim of procedural error before the BIA, however, we lack jurisdiction to consider it. *See Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990) (procedural errors correctable through the administrative process are subject to exhaustion requirement); *see also Bonhometre*, 414 F.3d at 448 (applying exhaustion requirement to claim that IJ failed to completely develop the record).