TALLMAN, Circuit Judge,
concurring in part and dissenting in part:
I must respectfully dissent from that part of the majority’s disposition that concludes that substantial evidence does not support the IJ’s determination that Shah was not persecuted on account of a protected ground.
Even under the mixed-motive standard applicable to this pre-REAL ID Act case, Borja v. I.N.S., 175 F.3d 732, 735-37 (9th Cir.1999) (en Banc), Shah bears the burden of demonstrating that the persecution he endured was on account of a ground distinct from his status as a police officer. Cruz-Navarro v. I.N.S., 232 F.3d 1024, 1028, 1030 (9th Cir.2000); Matter of Fuentes, 19 I. & N. Dec. 658, 661 (BIA 1988). This is a question of fact, and, contrary to the majority’s conclusion, the evidence is not “so compelling that no reasonable factfinder could fail to find” that Shah was persecuted on account of anything other than his position as a police *607 officer. Cruz-Navarro, 282 F.3d at 1028, 1030.
First, as the majority acknowledges, the Maoists targeted Shah only because they were displeased with the specific work he was doing as a police officer. I thus fail to see a distinction between this case and our decision in Ayala v. Holder, 640 F.3d 1095 (9th Cir.2011) (quoting Matter of C-A- 23 I. & N. Dec. 951, 958-59 (BIA 2006) (“[I]f a former police officer [is] singled out for reprisal, not because of his status as a former police officer, but because of his role in disrupting particular criminal activity, he [is] not ... considered, without more, to have been targeted as a member of a particular social group.”)). Guerilla revolutionaries — no less than drug dealers — may attack police officers in order to take revenge for past acts or preclude the officer from further interfering with their illegal activity.[1]
Moreover, even were we to pick and choose from among Shah’s various statements and consider only those most favorable to his claim,[2] Shah has failed to show any evidence — let alone substantial evidence — that a political opinion was imputed to him personally, rather than to his uniform. Shah’s attackers wanted one thing: for Shah to quit the police. As the IJ explicitly found, “there is nothing in this record to establish that, once [Shah] left the police force, the Maoists continued to look for him or attempt to target him.”[3] In light of these unrebutted facts, I do not see how the majority can legitimately conclude that Shah’s claim is not squarely precluded by Fuentes:[4]
*608 Guerrillas often engage in violence, not only against military targets, but also against civilian institutions that, whether intentionally or not, support domestic stability and the strength of the existing government. Policemen are by their very nature public servants who embody the authority of the state. As policemen around the world have found, they are often attacked either because they are (or are viewed as) extensions of the government’s military forces or simply because they are highly visible embodiments of the power of the state. In such circumstances, the dangers the police face are no more related to their personal characteristics or political beliefs than are the dangers faced by military combatants. Such dangers are perils arising from the nature of their employment and domestic unrest rather than ‘on account of immutable characteristics or beliefs within the scope of sections 101(a)(42)(A) or 243(h) of the Act, 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h) (1982).
19 I. & N. Dec. at 661.
In sum, because I agree with the majority that Shah failed to demonstrate persecution by the Nepalese police or eligibility for CAT relief — and because I would further hold that Shah has failed to establish persecution by the Maoists on account of anything other than the “perils arising from the nature of [his] employment and domestic unrest” in Nepal, id. — I would deny the petition for review.

. The majority’s attempt to circumvent our clear precedent by likening Shah’s work to that of the teacher in Cordon-Garcia wholly ignores the fact that, because Cordon-Garcia was not a police officer, Fuentes s broad bar did not apply. Compare Cordon-Garcia v. I.N.S., 204 F.3d 985, 990 (9th Cir.2000), with Cruz-Navarro, 232 F.3d at 1030. Cordon-Garcia was thus eligible for relief for the very reason that Shah is not: we do not expect— and have not legally recognized — that teachers will be persecuted on account of their position alone; the same cannot be said for police officers. Fuentes, 19 I. & N. Dec. at 661.

. This would require us to ignore — like the majority does — Shah’s sworn statement, made in support of a pre-removal asylum claim, wherein he repeatedly and exclusively attributes the Maoists’ interest in him to his status as a police officer: e.g., "During the course of my duty (sic) in police force, many policemen who work in the forces were always threatened because of their type of work. They are always the main targets of the Maoist guns and also are abducted, tortured, beaten and murdered cruelly.” It would also require us to ignore the undisputed fact that Shah’s claim rests on violence he endured — i.e., the ambush of a police convoy and an attack on a police station — simply because he was one of the many non-identifiable officers working at each of those locations when the Maoists struck.

. This factual conclusion should also leave little doubt as to whether the IJ will find on remand that Shah has a well-founded fear of future persecution for purposes of asylum and withholding of removal.

. To be clear, we readily acknowledge that a police officer could hurdle Fuentes's broad bar in a pre-REAL ID Act case by demonstrating a mixed-motive plus. My point is that he has failed to do so.
As an officer, Shah was expected to be "viewed as” pro-government. Fuentes, 19 I. & N. Dec. at 661. Pro-government necessarily incorporates being "viewed as” against "[gjuerillas” fighting to overthrow the government — in this case, the Maoists. See id. Fuentes therefore precludes Shah relief unless he can demonstrate that the Maoists believed that he would, even if he were not an officer, be against them — that the Maoists imputed to him, rather than to his uniform, an anti-Maoist political opinion. Compare Cruz-Navarro, 232 F.3d at 1030, with Lim v. I.N.S., 224 F.3d 929, 934 (9th Cir.2000) (“That Lim was followed and continued to receive threats after retirement only confirms the natural assumption that the NPA did not forgive him upon his retirement.” (emphasis added)); Ve *608 larde v. I.N.S., 140 F.3d 1305, 1311-12 (9th Cir.1998) (describing threats and attacks against officer after she left her position). I invite the majority to direct us to a single piece of record evidence that even suggests he has met this burden.