Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 10-2333

MATILDE RECINOS-CASTILLO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Stahl and Lipez, Circuit Judges.

Randy Olen and Robert D. Watt, Jr., on brief for petitioner.
Zoe Heller, Trial Attorney, Office of Immigration Litigation,
Tony West, Assistant Attorney General, United States Department of
Justice Civil Division, and Lyle D. Jentzer, Senior Litigation
Counsel, Office of Immigration Litigation, on brief for respondent.

December 29, 2011

**STAHL**, <u>Circuit Judge</u>.    Petitioner Matilde Recinos-Castillo (Recinos) appeals the denial of his petition for asylum and withholding of removal by the Board of Immigration Appeals (BIA).    Finding that substantial evidence supported the determination that he has failed to demonstrate a nexus to a statutorily protected ground, we deny the petition for review.

## I. Facts and Background

Recinos, a native and citizen of Guatemala, entered the United States without inspection in 1992, and in 1993 filed an asylum application with the Immigration and Naturalization Service, now a part of the Department of Homeland Security (DHS).    Recinos alleged that if he returned to Guatemala, he would be killed by communist guerrillas who had previously threatened him and who had killed people who supported the civil patrol, of which Recinos had been a member.    DHS referred the matter to the immigration court for adjudication.

In 2007, Recinos received a notice to appear before the immigration court to defend against removal proceedings.    Recinos, through counsel, conceded removability but renewed his request for asylum and also requested withholding of removal, relief under the Convention Against Torture (CAT), or alternatively, voluntary departure.    In July 2009, Recinos appeared before the immigration judge (IJ) and testified in support of his asylum application.

Recinos, who was born on March 14, 1965, testified that he had lived in Huehuetenango, Guatemala with his family until they moved to Playa Grande, Guatemala when he was eight.  During Guatemala's civil war with communist guerrillas, Recinos, his father and two of his brothers served as members of the civil patrol, an extension of the military.  In 1989, while serving in the civil patrol, one of his brothers was ambushed and killed by the guerrillas.  Recinos testified that, after his brother's death, he feared for his life because other members of the civil patrol had told him that guerrillas had asked about him.  Six months after his brother's death, Recinos moved back to Huehuetenango, where he remained until he left Guatemala for the United States.  Recinos's father and brother continued to live in Playa Grande without incident at least until the time of Recinos's testimony in 2009.  However, Recinos testified that he feared returning to Guatemala even though the civil war is over, because he understood that the guerrillas had become gang members, and he had recently heard that former members of the civil patrol had been killed by gang members.

The IJ issued an oral decision, finding Recinos credible but denying his petitions for asylum, withholding of removal and relief under the CAT.[1]  The IJ found that Recinos had not been a victim of past persecution, as any confrontation he experienced with the guerrillas was a result of his duties as a member of the

_____

[1] The IJ granted Recinos's request for voluntary departure.

civil patrol and that he presented no evidence that the guerrillas had personally targeted him. The IJ noted that when Recinos left for Huehuetenango, no guerrillas came looking for him and that his father and brother, also former members of the civil patrol, had remained safely in Playa Grande. The IJ found that there was not sufficient evidence to support the contention that former guerillas had become gang members, nor that they might be seeking to harm Recinos. Thus, the IJ found that Recinos had not demonstrated a well-founded fear of future persecution or a nexus between his fear and a statutorily protected ground. Recinos appealed the IJ's denial to the BIA.

The BIA affirmed the IJ's decision, finding that Recinos had failed to establish a nexus to a protected ground based on his membership in the civil patrol or his brother's death. The BIA further found that Recinos had produced no evidence to support any fear of future persecution, and that any fear he did have was of a general state of lawlessness in Guatemala, for which asylum relief is not available. Finding that Recinos did not meet the standards for asylum, the BIA found that he therefore did not meet the more stringent requirements for withholding of removal,[2] but granted him

_____

[2] Recinos did not appeal the IJ's decision denying relief under the CAT, and the BIA thus considered the claim abandoned. Recinos did not address his CAT claim in his brief, and we do not consider it here.

the right to voluntarily depart from the United States. Recinos timely petitioned for review.

## II. Discussion

We review the BIA's denial of an asylum petition to determine whether the decision is supported by substantial evidence. Castañeda-Castillo v. Holder, 638 F.3d 354, 362 (1st Cir. 2011). When the BIA "adopts the IJ's opinion and discusses some of the bases for the IJ's decision," we have authority to review both decisions, Vallejo Piedrahita v. Mukasey, 524 F.3d 142, 144 (1st Cir. 2008), but "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); see also Castañeda-Castillo, 638 F.3d at 362. We review legal determinations de novo, giving deference to the BIA's interpretations of the underlying statutes. Castañeda-Castillo, 638 F.3d at 362.

In order to be eligible for asylum, an applicant has the burden to show that he is a refugee, 8 U.S.C. § 1158(b)(1)(A)-(B); Nako v. Holder, 611 F.3d 45, 48 (1st Cir. 2010), a status that can be established by demonstrating that one has either experienced past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, 8 U.S.C. § 1101(a)(42); Castañeda-Castillo, 638 F.3d at 362.

-5-

Although Recinos must demonstrate that he either experienced past persecution or that he has a well-founded fear of future persecution in order to be eligible for asylum, we decide his case based on an examination of whether substantial evidence supported the conclusion that he failed to demonstrate a nexus between his experience and a statutorily protected ground.

Recinos claims that he experienced past persecution on account of his status as a civil patrol member.  However, "fears . . . arising from employment in the military [or] from general conditions of violence and civil unrest" ordinarily will not support a claim of persecution.  Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002) (internal quotation marks omitted).  Both the IJ and the BIA found that any danger Recinos faced due to conflict with the guerrillas arose out of his duties as a member of the civil patrol; these "dangers faced by policemen[3] as a result of that status alone are not ones faced on account of race, religion, nationality, membership in a particular social group, or political opinion," and therefore do not render an applicant eligible for asylum.  Matter of Fuentes, 19 I. & N. Dec. 658, 661 (B.I.A. 1988).

Recinos argues that the BIA erred by applying Fuentes as a per se bar to asylum eligibility, as we rejected such an approach in Castañeda-Castillo, which was handed down after the BIA's

---

[3] We consider serving as a member of the civil patrol to be equivalent to serving in the military or as a police officer.

decision in Recinos's case. See Castañeda-Castillo, 638 F.3d at 365 ("Fuentes does not establish a per se bar to consideration of attacks that occurred while the respondent happened to have been on active duty, where the attacks were not directly related to that fact."). However, in Castañeda-Castillo, the persecution that Castañeda and his family experienced was "not, as in Fuentes, tied to whoever happened to be filling the role of police officer or embassy guard or member of the military, but w[as] directed at Castañeda and his family personally."[4] Id. In Castañeda-Castillo, we distinguished persecution that targeted an applicant personally "even if originating out of actions undertaken" while serving in a law-enforcement capacity from "dangers that are directed at the role one occupies," thus leaving the core of Fuentes untouched: dangers faced while fulfilling one's duties as a law enforcer, without anything more, may not give rise to an asylum claim. Id. at 365-66.

---

[4] The facts of Castañeda-Castillo are readily distinguishable from those here. There, the applicant was a military officer stationed at a location near an opposition-group stronghold where the military massacred dozens of civilians, although Castañeda had nothing to do with the massacre. Later, he testified before the Peruvian senate regarding the massacre, which was reported in Peruvian news media. Thereafter, his name became associated with the massacre by the opposition group, which repeatedly harassed and attacked him and his family. Castañeda-Castillo, 638 F.3d at 357-58. These facts are in stark contrast to the vague and sparse account Recinos has provided, which fails to show any evidence of personal targeting.

Here, the IJ correctly found that Recinos had failed to provide any evidence that the guerrillas had personally targeted him and was also correct in finding that any danger he faced arose out of his duties as a member of the civil patrol. Thus, the general rule in Fuentes is still applicable to Recinos, and he may not use his membership in the civil patrol to demonstrate a nexus to a statutorily protected ground for asylum. Fuentes, 19 I. & N. Dec. at 661.

Fuentes did leave open the possibility that a status as a former civil patrol member, which is "an immutable characteristic, as it is beyond the capacity of the [applicant] to change," could potentially give rise to asylum eligibility. Id. at 662 ("It is possible that mistreatment occurring because of such a status in appropriate circumstances could be found to be persecution on account of political opinion or membership in a particular social group."). This carve-out is available "where hostilities have ceased" and the applicant experiences "continued, off-the-job persecution directed at the officer personally," which "is decidedly not part of the job." Castañeda-Castillo, 638 F.3d at 364 (citing Fuentes, 19 I. & N. Dec. at 661-62). Recinos, however, has not had any interaction with the guerrillas since the hostilities in Guatemala ceased, and the IJ found that he had not presented sufficient evidence to support the contention that former guerrillas are now gang members who are harming former civil patrol

-8-

members. As we have said, Recinos's father and brother, both former civil patrol members, have continued to lived safely in Playa Grande, Guatemala. Cf. Aquilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) ("Without some explanation, the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."). Any fear Recinos has of returning to Guatemala is not of persecution on account of a statutorily protected ground, but is instead of a general state of lawlessness in Guatemala, as the BIA found. Therefore, Recinos's status as a former civil patrol member does not render him eligible for asylum.

As Recinos cannot establish a nexus between any persecution he might have experienced and a statutorily protected ground, we hold that the BIA's denial of his application for asylum is amply supported by substantial evidence. Because Recinos fails to meet the requirements for asylum, he cannot meet those for withholding of removal. Stanciu v. Holder, 659 F.3d 203, 208 (1st Cir. 2011).

### III. Conclusion

We deny the petition for review.