MARTIN, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion because I do not read Matter of Fuentes, 19 I. & N. Dec. 658 (BIA 1988), to preclude a grant of asylum by the United States to Mr. Gavilano. Specifically, I understand Mr. Gavilano’s work in capturing the Shining Path leader Ramirez Duran Duran, and the resulting retaliation directed against him by the Shining Path, to be quite different from the facts addressed in Fuentes. For that reason I would vacate the BIA opinion here, and remand Mr. Gavilano’s case so that it could be considered without the presumptions that flawed the initial consideration of his claim.
True enough, Fuentes said that “dangers faced by policemen as a result of that status alone are not ones faced on account of ... membership in a particular social group” because “[s]uch dangers are perils arising from the nature of their employment and domestic unrest rather than ‘on account of immutable characteristics or beliefs....” 19 I. & N. Dec. at 661 (quoting 8 U.S.C. § 1101(a)(42)(A) (1982)). This statement, however, must be understood in the context of its facts. The petitioner in Fuentes was an officer in the El Salvadoran National Police claiming asylum based on attacks he experienced in the line of duty. Id. at 659. Fuentes held that being shot at while on the job as a police officer cannot be the basis for an asylum claim. Id. at 661-62. But Mr. Gavilano’s circumstance is materially different because the attacks on him were personal: they began while he was serving in the military, persisted after he left service, and extended to members of his family. Fuentes itself recognized this distinction, see id. at 662, as have other opinions issued by the BIA. E.g., Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985) (stating that “persecution on account of membership in a particular social group” may include a group whose members “shared past experience such as former military leadership”). In this light, the Majority’s acknowledgment that “ ‘in appropriate circumstances’ ” a former military officer may have a claim to persecution “on account of membership in a particular social group,” Majority Op. at 606 (quoting Fuentes, 19 I. & N. Dec. at 662), begs the question: if not in Mr. Gavilano’s circumstances, then when?
This Circuit has certainly recognized the BIA’s position that “persons exposed to risks normally associated with employment in occupations such as the police or military” do not come within the ambit of BIA protection. See Castillo-Arias v. U.S. Att’y Gen., 446 F.3d 1190, 1197 (11th Cir.2006). In Castillo-Arias, this Court originally remanded the case to the BIA, asking the question: “whether noncriminal informants working against the Cali drug cartel constitute a ‘particular social group’ [under the INA].” Id. at 1191. The BIA responded that noncriminal informants do not constitute a “particular social group,” primarily because “informants lack[] the necessary social visibility to be recognized as a ‘particular social group.’ ” Id. at 1193-94. Applying Chevron deference, this Court affirmed the BIA’s position on appeal. Id. at 1199.
Although I understand the majority’s reference to Castillo-Arias, I do not read that case to have presented the question we have here. Our Court in Castillo- *610 Arias recognized that “[generally, those informants who remain anonymous are not visible enough to be considered a ‘particular social group/ as the very nature of the activity prevents them from being recognized by society at large.” Id. at 1197. In quite a contrast to the anonymous informant in Castillo-Arias, Mr. Gavilano was publicly lauded for his role in capturing Ramirez Duran Duran. Beyond that, in Mr. Gavilano’s case, the BIA did not even inquire as to whether military intelligence officers involved in Duran Duran’s capture comprise a “particular social group” within the meaning of the INA. Thus, I do not read Castillo-Añas to require the holding the Majority reaches here.
The approach advocated by the BIA and adopted by the Majority here was rejected by the First Circuit in a recent case which presented the almost identical legal issue. Castañedas-Castillo v. Holder also involved a high-ranking Peruvian military officer singled out for threats and attacks by the Shining Path because he was involved in a high-profile military operation. 638 F.3d 354, 357-59 (1st Cir.2011). When he arrived in the United States, the BIA denied Mr. Castañeda’s asylum application because it determined that the attacks he suffered were motivated by the Shining Path’s desire for “revenge,” not Mr. Castañeda’s membership in a group comprised of military officers involved in the operation. Id. at 359. The First Circuit rejected this reasoning, chiding the BIA for drawing an artificial “distinction between the proposition that the Shining Path targeted Castañeda because they wanted revenge for his alleged role in Accomarca, and that the Shining Path targeted him because he was a member of the group of former military officers that they believed to have been involved in Accomarca.” Id. at 363. Indeed, the First Circuit determined that “[o]n the facts of this case, the Shining Path’s attempts to exact retribution were not only consistent with persecution on the basis of group membership, but in fact constituted such persecution.” Id.
I see no meaningful difference between Mr. Gavilano’s application for asylum, and that of Mr. Castañeda. Neither do I see a difference in the BIA’s treatment of these two petitioners. In both cases, the BIA denied the petitioner’s asylum application because it operated under the misapprehension that, as a matter of law, the harm suffered by the petitioners was categorically excluded from the definition of persecution. I read Fuentes to have preserved within the meaning of persecution precisely the type of personal targeting Mr. Gavi-lano got from the Shining Path on account of his role in the capture of one of its leaders. Thus, I would follow the First Circuit’s example in Castañeda-Castillo, and vacate the BIA’s opinion here. I would remand Mr. Gavilano’s case for proper consideration of whether Peruvian intelligence officers involved in the capture of Ramirez Duran Duran comprise a cognizable social group and, if so, whether Mr. Gavilano was the victim of persecution, or has a well-founded fear of future persecution, on that basis. See, e.g., Castañeda-Castillo, 638 F.3d at 363; cf. Mejia v. U.S. Att’y Gen., 498 F.3d 1253, 1258 (11th Cir.2007) (remanding for “a determination in the first instance” whether the mistreatment petitioner suffered was “on account of’ a statutorily protected ground where the IJ and BIA each failed to reach the issue (quotation marks omitted)).