[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10264

_____

Agency No. A098-858-955

JIMMY SANDRO GAVILANO AMADO,
GIOVANA JULIA PERAZZO RATTO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 21, 2013)

Before MARTIN, HILL, and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

Primarily at issue is whether substantial evidence supports the Board of Immigration Appeals' (BIA) affirming an immigration judge's (IJ) denying the asylum application of Jimmy Sandro Gavilano-Amado and the derivative application of his wife, Giovana Julia Perazzo-Ratto, natives and citizens of Peru. DENIED.

## I.

Gavilano, a native and citizen of Peru, was an analyst with the Peruvian military's counter-terrorism unit and was involved in the capture of Ramirez Duran Duran, a leader of the Shining Path terrorist organization. After Shining Path members discovered Gavilano's identity, he and his family began receiving threatening telephone calls from its members. Believing it would make his family safer, he left the military in 2004 to work for a private company in Peru. Nonetheless, later that year, Gavilano saw two vehicles without license plates first drive past his home repeatedly, and later follow him in the street in what he believed to be a kidnaping attempt.

---

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by Designation.

Gavilano arrived in the United States in April 2005 on a non-immigrant visa. That June, he applied for asylum and withholding of removal, contending he was persecuted in Peru because of his membership in a cognizable social group.

In hearings before the IJ in April 2008 and March 2010, Gavilano again contended he was persecuted for membership in a cognizable social group. In addition, he asserted:  he was also persecuted for his political opinion; and he was entitled both to withholding of removal and to relief under the United Nations Convention Against Torture (CAT).  Although the IJ expressed appreciation for Gavilano's opposing Shining Path in Peru, his application for asylum, withholding of removal, or CAT relief was denied.

On appeal to the BIA, Gavilano presented claims for:  asylum due to persecution for his political opinion and membership in a cognizable social group; discretionary political or humanitarian asylum; withholding of removal; and lack of due process.  He did not present the CAT claim to the BIA.  The BIA affirmed the IJ's rulings regarding:  asylum; discretionary asylum; withholding of removal; and, despite Gavilano's not raising it, CAT.  The BIA also ruled that Gavilano's proceedings before the IJ were fundamentally fair and did not violate due process. Accordingly, Gavilano's appeal was dismissed in December 2011.

## II.

"When, as here, the BIA issues its own opinion, we review only the decision of the BIA, except to the extent the BIA expressly adopts the IJ's decision." *Kueviakoe v. United States Att'y Gen.*, 567 F.3d 1301, 1304 (11th Cir. 2009). Because the BIA issued a separate opinion and upheld the IJ's rulings without "expressly adopt[ing]" the IJ's reasoning, only the BIA's decision is reviewed. *Id.*

The BIA's factual determinations are reviewed under the highly deferential substantial-evidence test, which requires "view[ing] the record evidence in the light most favorable to the [BIA]'s decision and draw[ing] all reasonable inferences in favor of that decision". *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). The BIA's decision must be affirmed "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole". *D-Muhumed v. United States Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (quotation marks omitted). To reverse fact findings, "we must find that the record not only supports reversal, but compels it". *Mendoza v. United States Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003). In other words, evidence in the record that may support a conclusion contrary to the BIA's findings is not enough to justify reversal. *Adefemi*, 386 F.3d at 1027. Of course, the BIA's legal determinations are reviewed *de novo*. *Mejia v. United States Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007).

4

## A.

For his primary claim, Gavilano contends:  asylum should have been granted, pursuant to 8 U.S.C. § 1158, because the evidence established both past persecution and a well-founded fear of future persecution as a result of both his membership in a particular social group and his political opinion; and, the BIA erred in finding the harm he suffered did not constitute persecution.  He asserts the BIA should instead have applied this court's holding in *Diallo v. United States Attorney General*, 596 F.3d 1329, 1333-34 (11th Cir. 2010):  a "death threat by a person who has the immediate ability to act on it constitutes persecution regardless of whether the threat is successfully carried out".  Along that line, he maintains Shining Path has the ability to carry out its threats.

An alien who arrives, or is physically present, in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee".  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

5

8 U.S.C. § 1101(a)(42)(A).  It goes without saying that the asylum applicant carries the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).

Accordingly, to establish eligibility for asylum, the alien must, with specific and credible evidence, establish either past persecution on account of a statutorily listed factor, or a well-founded fear the statutorily listed factor will cause future persecution.  8 C.F.R. § 208.13(b); *Al Najjar*, 257 F.3d at 1287.  The requisite persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation".  *Sepulveda v. United States Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks omitted).

In determining whether an alien has suffered *past persecution*, the factfinder must consider the cumulative effects of any alleged incidents.  *Delgado v. United States Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).  This court rejects a rigid requirement of physical injury.  *Jimenez v. United States Att'y Gen.*, 492 F.3d 1223, 1233 (11th Cir. 2007) ("attempted murder is persecution", despite lack of physical injury).  On the other hand, "mere harassment does not amount to persecution", *id.* at 1232 (quotation marks omitted), nor does a minor beating with "only scratches and bruises", *Djonda v. United States Att'y Gen.*, 514 F.3d 1168, 1174 (11th Cir. 2008) (quotation marks omitted).  Moreover, "evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate

with guerrillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground". *Ruiz v. United States Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

To establish a *well-founded fear of future persecution*, the applicant must show there is a "reasonable possibility" of suffering persecution if he returns to his home country. *Mejia*, 498 F.3d at 1256 (quotation marks omitted). Such fear of future persecution must be "subjectively genuine and objectively reasonable". *Al Najjar*, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution", and "[i]n most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution". *Id.* (quotation marks omitted). "In addition to providing an independent avenue for asylum eligibility, a showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution." *De Santamaria v. United States Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008) (footnote omitted). This presumption may be rebutted if the Government shows, by a preponderance of the evidence, that conditions in the country have changed or "the applicant could avoid future persecution by relocating within the country if, under all the circumstances, it would be reasonable to expect the applicant to do so". *Id*. (quotation omitted).

7

The alien must show a nexus between a statutorily protected ground and the feared persecution, and he can do so by presenting "specific, detailed facts showing a good reason to fear that he or she will be *singled out* for persecution on account of [the statutorily protected factor]". *Forgue v. United States Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation marks omitted) (emphasis in original).

As discussed below, the harm Gavilano suffered, including telephone threats and being followed by unknown individuals in two vehicles, does not rise to the level of persecution. *Cf. Diallo*, 596 F.3d at 1329 (individual who was beaten, detained, and threatened with imminent execution by soldiers who had just killed his brother suffered persecution). Likewise, the evidence also supports the BIA's affirming the IJ's finding Gavilano failed to demonstrate a well-founded fear of future persecution on account of a protected ground.

**1.**

The BIA has held a "particular social group" refers to persons who "share a common, immutable characteristic . . . such as sex, color, or kinship ties, or in some circumstances . . . a shared past experience such as former military leadership or land ownership". *Matter of Acosta*, 19 I&N Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439, 447 (BIA 1987). Furthermore, the group must have sufficient "social visibility",

8

and persecution based on membership in a particular social group should not be defined so broadly that it becomes "a catch-all for all groups who might claim persecution". *Castillo-Arias v. United States Att'y Gen.*, 446 F.3d 1190, 1196–98 (11th Cir. 2006) (noncriminal informants working against Colombian drug cartel did not "warrant an exception to the general rule that those who engage in risks similar to those of the police or military, regardless of motive, do not receive protection as a particular social group under the [Immigration and Nationality Act]").

In *Matter of Fuentes*, 19 I&N Dec. 658, 662 (BIA 1988), *superseded by statute on other grounds*, *as stated in Falcon Carriche v. Ashcroft*, 350 F.3d 845, 854 n.9 (9th Cir. 2003), the BIA concluded mistreatment occurring because of the status of being a former member of the national police "in appropriate circumstances" could be found to be persecution on account of membership in a particular social group. The BIA also noted, however:

> Policemen are by their very nature public servants who embody the authority of the state. As policemen around the world have found, they are often attacked either because they are (or are viewed as) extensions of the government's military forces or simply because they are highly visible embodiments of the power of the state. In such circumstances, the dangers the police face are no more related to their personal characteristics or political beliefs than are the dangers faced by military combatants. Such dangers are perils arising from the nature of their employment and domestic unrest rather than 'on account of' immutable characteristics or beliefs[.]

9

*Matter of Fuentes*, 19 I&N Dec. at 661.  This court has noted with approval that the BIA, in *Matter of Fuentes*, "emphasized that it did not afford protection to persons exposed to risks normally associated with employment in occupations such as the police or military".  *Castillo-Arias*, 446 F.3d at 1197 (quotation marks omitted).

Gavilano's actions as a member of the Peruvian military, which included counter-terrorism work against Shining Path, are "normally associated" with the risk of threatened retribution from its members.  The evidence, including Gavilano's own statements and testimony, showed he was targeted by Shining Path because it wanted revenge for, according to Gavilano, his having identified and participated in the capture of Ramirez Duran Duran, rather than because he had the immutable characteristic of being a former intelligence officer in the Peruvian military.  Therefore, although in some circumstances it is possible for a former member of a police or military force to claim social-group status, Gavilano's situation falls within the general rule of *Matter of Fuentes* that such status does not normally apply.

In advancing a different reading of *Matter of Fuentes*, under which this action should be remanded to the BIA for consideration of whether Gavilano can properly claim social-group status, the dissent relies heavily on *Castaneda-Castillo v. Holder*, 638 F.3d 354 (1st Cir. 2011).  Our holding, however, is based on this

10

court's binding precedent, not the persuasive precedent of another circuit.  Along that line, this court employs a strong prior-panel rule, under which "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*". *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)).  Therefore, because retaliation from a terror group is a risk "normally associated" with counter-terrorism military work, we are bound by a prior panel's above-described holding in *Castillo-Arias*.  (Acknowledging as it must, that this court in *Castillo-Arias* followed this position of the BIA in *Matter of Fuentes*, discussed *supra*, the dissent instead quibbles about factual differences between those in *Castillo-Arias* and those presented in this instance.  But, at issue are the facts underlying the BIA's decision regarding Gavilano.  As discussed *supra* and *infra*, he is not entitled to relief.)

Moreover, even assuming, as the dissent urges, that Gavilano may have caused Shining Path to seek to retaliate against him because of his membership in a cognizable social group, he has neither suffered the above-discussed requisite persecution nor shown the above-discussed requisite well-founded fear of future persecution. 8 C.F.R. § 208.13(b).  As noted, this court will find such persecution only in "extreme" circumstances. *Sepulveda*, 401 F.3d at 1231.  In *Sepulveda*,

11

petitioner was targeted by a Colombian guerilla group. *Id.* at 1228-29. She received three death threats by telephone; her brother was threatened in person when the guerillas could not locate her; and a bomb exploded in the restaurant where she was employed shortly after her shift ended. *Id.* at 1229. This court ruled petitioner's experiences did not rise to the level of persecution, largely because the evidence did not compel the conclusion that the bomb was directed at her. *Id.* at 1231.

On the other hand, in *Castaneda-Castillo*, Shining Path subjected petitioner to: a physical attack near his home; an attempt by gunmen to stop a taxi in which he was riding; a bomb exploding in a restaurant several minutes after he exited; explosives being detonated near his parents' home; an attempt to kidnap his daughter from her school; and the murder of his neighbor and colleague in front of the neighbor's family. 638 F.3d at 358. The First Circuit determined, "[o]n the facts of this case", Shining Path's actions constituted persecution. *Id.* at 363.

In short, comparing Gavilano's situation to that in *Castaneda-Castillo* is comparing the proverbial "apples" to "oranges". Gavilano's situation is far more similar to that in *Sepulveda* than that in *Castaneda-Castillo*: as discussed *supra*, Gavilano and his family received telephoned threats and he was twice followed by a suspicious vehicle. Again, pursuant to *Sepulveda*, Gavilano did *not* suffer persecution.

12

**2.**

An alien who alleges persecution on account of his political opinion must establish that he was persecuted because of his actual or imputed political opinion. *Sanchez v. United States Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004); *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) ("The ordinary meaning of the phrase 'persecution on account of . . . political opinion' in [8 U.S.C. § 1101(a)(42)] is persecution on account of the *victim's* political opinion, not the persecutor's." (emphasis and alteration in original)).  Substantial evidence supports the BIA's affirming the IJ's finding Gavilano failed to establish either past persecution or a well-founded fear of future persecution because of his political opinion.  *See* 8 C.F.R. § 208.13(a) and (b); *Al Najjar*, 257 F.3d at 1287.  There was no evidence that he expressed any political opinion, or that Shining Path was aware of his political views and persecuted him because of them.

**B.**

Gavilano presents four other claims:  violation of his right to due process; discretionary political or humanitarian asylum; withholding of removal; and CAT. Each fails.

**1.**

Gavilano contends the "blatant inconsistency between the facts considered proven, the corroborative evidence and the legal conclusion reached by the BIA

and the [IJ] amounts to [a deprivation] of a fair and impartial adjudication" in violation of the Due Process Clause.  Due-process claims are reviewed *de novo*. *Ali v. United States Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006).

"In order to establish a due process violation, an alien must show that he . . . was deprived of liberty without due process of law, and that the asserted error caused him substantial prejudice."  *Avila v. United States Att'y Gen.*, 560 F.3d 1281, 1285 (11th Cir. 2009) (quotation marks omitted).  "To show substantial prejudice, the petitioner must show the alleged due process violation would have affected the outcome of the case."  *Id*.

The BIA ruled correctly that Gavilano's due-process claim amounted to asserting the IJ erred as a matter of law in denying asylum relief.  But, even if that occurred, it would not constitute a denial of due process.  Gavilano makes no claim regarding procedural due process, and nothing in the record indicates the proceedings were fundamentally unfair.

**2.**

Gavilano contends he is entitled to discretionary humanitarian asylum, pursuant to 8 C.F.R. § 208.13(b)(1)(iii)(B). As he acknowledged at oral argument, he has waived this contention by failing to brief it adequately. *E.g.*, *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012).

14

**3.**

Gavilano contends he is entitled to withholding of removal, pursuant to 8 U.S.C. § 1231(b)(3).   He has waived this contention by failing to brief it adequately. *E.g.*, *Little*, 691 F.3d at 1306.

**4.**

Finally, Gavilano contends he is entitled to relief under CAT, 8 C.F.R. §§ 1208.16-18.  "[A]bsent a cognizable excuse or exception, we lack jurisdiction to consider claims [as in this instance] that have not been raised before the BIA". *Amaya-Artunduaga v. United States Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (quotation marks omitted).  Because Gavilano failed to exhaust his CAT claim before the BIA, we lack jurisdiction to consider it; "[t]hat the BIA reviewed the IJ's adverse [CAT] determination *sua sponte* does not alter our conclusion". *Id.*

**III.**

For the foregoing reasons, the petition for review is DENIED.

MARTIN, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion because I do not read <u>Matter of Fuentes</u>, 19 I. & N. Dec. 658 (BIA 1988), to preclude a grant of asylum by the United States to Mr. Gavilano.  Specifically, I understand Mr. Gavilano's work in capturing the Shining Path leader Ramirez Duran Duran, and the resulting retaliation directed against him by the Shining Path, to be quite different from the facts addressed in <u>Fuentes</u>.  For that reason I would vacate the BIA opinion here, and remand Mr. Gavilano's case so that it could be considered without the presumptions that flawed the initial consideration of his claim.

True enough, <u>Fuentes</u> said that "dangers faced by policemen as a result of that status alone are not ones faced on account of . . . membership in a particular social group" because "[s]uch dangers are perils arising from the nature of their employment and domestic unrest rather than 'on account of' immutable characteristics or beliefs . . . ."  19 I. & N. Dec. at 661 (quoting 8 U.S.C. § 1101(a)(42)(A) (1982)).  This statement, however, must be understood in the context of its facts.  The petitioner in <u>Fuentes</u> was an officer in the El Salvadoran National Police claiming asylum based on attacks he experienced <u>in the line of duty</u>.  <u>Id.</u> at 659.  <u>Fuentes</u> held that being shot at while on the job as a police officer cannot be the basis for an asylum claim.  <u>Id.</u> at 661–62.  But Mr. Gavilano's circumstance is materially different because the attacks on him were personal: they

16

began while he was serving in the military, persisted after he left service, and extended to members of his family.  Fuentes itself recognized this distinction, see id. at 662, as have other opinions issued by the BIA.  E.g., Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985) (stating that "persecution on account of membership in a particular social group" may include a group whose members "shared past experience such as former military leadership").  In this light, the Majority's acknowledgment that "'in appropriate circumstances'" a former military officer may have a claim to persecution "on account of membership in a particular social group," Majority Op. at 9 (quoting Fuentes, 19 I. & N. at 662), begs the question: if not in Mr. Gavilano's circumstances, then when?

This Circuit has certainly recognized the BIA's position that "persons exposed to risks normally associated with employment in occupations such as the police or military" do not come within the ambit of BIA protection.  See Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1197 (11th Cir. 2006).  In Castillo-Arias, this Court originally remanded the case to the BIA, asking the question: "whether noncriminal informants working against the Cali drug cartel constitute a 'particular social group' [under the INA]."  Id. at 1191.  The BIA responded that noncriminal informants do not constitute a "particular social group," primarily because "informants lack[] the necessary social visibility to be recognized as a 'particular

17

social group.'" Id. at 1193–94.  Applying Chevron deference, this Court affirmed the BIA's position on appeal.  Id. at 1199.

Although I understand the majority's reference to Castillo-Arias, I do not read that case to have presented the question we have here.  Our Court in Castillo-Arias recognized that "[g]enerally, those informants who remain anonymous are not visible enough to be considered a 'particular social group,' as the very nature of the activity prevents them from being recognized by society at large."  Id. at 1197.  In quite a contrast to the anonymous informant in Castillo-Arias, Mr. Gavilano was publicly lauded for his role in capturing Ramirez Duran Duran. Beyond that, in Mr. Gavilano's case, the BIA did not even inquire as to whether military intelligence officers involved in Duran Duran's capture comprise a "particular social group" within the meaning of the INA.  Thus, I do not read Castillo-Arias to require the holding the Majority reaches here.

The approach advocated by the BIA and adopted by the Majority here was rejected by the First Circuit in a recent case which presented the almost identical legal issue.  Castañeda-Castillo v. Holder also involved a high-ranking Peruvian military officer singled out for threats and attacks by the Shining Path because he was involved in a high-profile military operation.  638 F.3d 354, 357–59 (1st Cir. 2011).  When he arrived in the United States, the BIA denied Mr. Castañeda's asylum application because it determined that the attacks he suffered were

18

motivated by the Shining Path's desire for "revenge," not Mr. Castañeda's membership in a group comprised of military officers involved in the operation. Id. at 359. The First Circuit rejected this reasoning, chiding the BIA for drawing an artificial "distinction between the proposition that the Shining Path targeted Castañeda because they wanted revenge for his alleged role in Accomarca, and that the Shining Path targeted him because he was a member of the group of former military officers that they believed to have been involved in Accomarca." Id. at 363. Indeed, the First Circuit determined that "[o]n the facts of this case, the Shining Path's attempts to exact retribution were not only consistent with persecution on the basis of group membership, but in fact constituted such persecution." Id.

I see no meaningful difference between Mr. Gavilano's application for asylum, and that of Mr. Castañeda. Neither do I see a difference in the BIA's treatment of these two petitioners. In both cases, the BIA denied the petitioner's asylum application because it operated under the misapprehension that, as a matter of law, the harm suffered by the petitioners was categorically excluded from the definition of persecution. I read Fuentes to have preserved within the meaning of persecution precisely the type of personal targeting Mr. Gavilano got from the Shining Path on account of his role in the capture of one of its leaders. Thus, I would follow the First Circuit's example in Castañeda-Castillo, and vacate the

19

BIA's opinion here.  I would remand Mr. Gavilano's case for proper consideration of whether Peruvian intelligence officers involved in the capture of Ramirez Duran Duran comprise a cognizable social group and, if so, whether Mr. Gavilano was the victim of persecution, or has a well-founded fear of future persecution, on that basis.  See, e.g., Castañeda-Castillo, 638 F.3d at 363; cf. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1258 (11th Cir. 2007) (remanding for "a determination in the first instance" whether the mistreatment petitioner suffered was "on account of" a statutorily protected ground where the IJ and BIA each failed to reach the issue (quotation marks omitted)).